ESSEX COUNTY COURT OF COMMON PLEAS.

MARY F. GRAY, PETITIONER-APPELLEE, v. HERBERT AND
FRANCES GREENWOOD, RESPONDENTS-APPELLANTS.

Decided November 7, 1941.

NOTE—This case having been affirmed in the Supreme Court and
the opinion reported at 129 *N. J. L.* 596, we print the opinion rendered
in this court.

For the petitioner-appellee, *Harry Cohn.*

For the respondents-appellants, *Arthur Mead.*

FLANNAGAN, C. P. J. This is an appeal from an award in
the Workmen's Compensation Bureau in favor of petitioner.

The petitioner, Mrs. Gray, is a seamstress and dressmaker
by occupation. She was accustomed to do her work at her
home, the work being brought there by her customers, but as
an accommodation at times did the work at her customer's
homes.

The occupation of the respondent, Mrs. Greenwood, is that
of housewife.

Petitioner had, at the time of the accident in question,
known Mrs. Greenwood for some 35 years, having worked in
respondent's family for her mother.

On the occasion of the accident, which occurred January
12th, 1940, Mrs. Greenwood had, in her house, work requir-
ing the attention of a seamstress, altering and mending, which
had accumulated since October, 1939. Respondent had

employed petitioner before to work in petitioner's home as well as in respondent's home; the work in respondent's home having been done on August 17th, December 23d, and December 24th, of 1938, and the work in petitioner's home having been done on March 25th, 1938, and on four occasions between December 23d, 1938, and January 12th, 1940.

Other seamstresses had been employed from time to time by Mrs. Greenwood at her home at 35 and 50 cents per hour. The petitioner's employment was at $4 per day and was for a single day.

On January 12th, 1940, Mrs. Greenwood met Mrs. Gray by previous appointment at the railroad station in Maplewood, and pursuant to previous understanding was driving· her in her auto to the Greenwood home to do the seamstress work above referred to, which had accumulated there. The streets were slippery and on reaching the house adjacent to her own Mrs. Greenwood found she could not get her auto to her own driveway. She thereupon suggested to Mrs. Gray that she make her way to the house on foot, while Mrs. Greenwood parked the car and followed. There was ice on the sidewalk in front of the house next to Mrs. Greenwood's house, and in passing over this ice in order to reach the Greenwood entrance Mrs. Gray slipped and fell and sustained the injuries for which she now seeks compensation.

Only one point is raised here which presents difficulty. viz., the claim of respondents that the employment was casual.

The meaning of the words *"Casual Employment"* presents great difficulty. Casual is defined in Funk and Wagnall's Dictionary as "Occurring by chance or accident or without design; accidental; unexpected." In 1 *Words and Phrases* (3d and 4th Series) we find about *eighty* attempts by various courts of the country to clarify and explain it. Our own legislature, in an effort to simplify or circumscribe its meaning when applied to an employment disconnected with any business of an employer, defined it in a negative way as, "an employment not regular, periodic or recurring" (Workmen's Compensation Act, section III, paragraph 23c), and our Court of Errors and Appeals, in further explanation, says that the "Employment is regular when it is steady and permanent

for more than a single piece of work; recurring when the work is to be performed at some future time by the same party, without further engagement; and periodic, when the work is to be performed at stated intervals without further engagement." *Forrester* v. *Eckerson,* 107 *N. J. L.* 156 (at *p.* 158); 151 *Atl. Rep.* 639.

In *Hubbe* v. *Lynch,* 36 *N. J. L. J.* 86, Judge Martin, in speaking of the word "casual," says: "There does not seem to be any satisfactory definition in the text books. Dawbern, in his work on *Employer's Liability and Workmen's Compensation,* 94-97, seems to reach the conclusion that the word "casual," as used in the statute, is the opposite of "regular, periodic or permanent," but shows that even this is not a clear test. It would seem that the best method of ascertaining whether any employment is casual is to take into consideration all the circumstances attending the contract of hiring and the nature of the services in each case."

Certain indicia of the quality "casual," as applied to employment, seem to be indicated in the many cases on the subject. Similarly, many "badges" or indicia have been indicated in the books as pointing to fraud.

In the case of *Stillman* v. *Judges of the Court of Common Pleas,* 6 *N. J. Mis. R.* 6; 139 *Atl. Rep.* 705, the employment was to do "work of a kind usually done by petitioner," viz., housework; it was for a fixed time, "at least" two weeks, and longer if circumstances required. The occasion for the employment was an operation upon the mistress of the household for appendicitis.

The *indicium* of the casual quality of the employment in that case seems to be the attack of appendicitis affecting the mistress of the house, patently an unusual, irregular and unexpected event, never recurring if the appendix is removed. The indicia of the non-casual quality of the employment seem to be: (1) The work was "of a kind usually done by petitioner," and thus regular from the standpoint of the employee. That such is a badge of non-casual employment is obvious, the reverse being equally obvious, viz., that where one accepts work outside his established and regular calling, the idea that it is temporary and transient is spontaneously evolved. (2)

The employment was for a fixed time, "two weeks or longer." A long employment covering a period of years would seem to preclude the idea of casual, whereas an employment for an hour would seem inevitably to suggest it, so that a fixed duration is a circumstance having a bearing. In the Stillman case the court evidently regarded an employment for "two weeks or longer" as an *indicium* that it was non-casual. (3) The work (housework) was regular in character from the standpoint of an employer in the respect that it was work which had regularly to be done in the household from day to day, instead of being work the necessity for which only irregularly or accidentally arose. This also the court regarded as an *indicium* that it was non-casual.

On the whole, the court regarded the indicia that the work was non-casual as outweighing those that it was casual.

In *Cantwell* v. *Delaney,* 10 *N. J. Mis. R.* 783; 160 *Atl. Rep.* 679, the work engaged to be done was that of practical nurse and general houseworker "for a period of three weeks and such further time as her services might be desired," the occasion for the work being the confinement of the mistress of the house in childbirth. Here there were present the indicia: (1) of an employment for a certain length of time, of at least three weeks; (2) to do work (housework) which had of necessity regularly to be done; (3) on an occasion regular in character in the sense that it is naturally to be expected, where a married couple are living together, and the time of its occurrence is long known in advance with reasonable certainty. The *indicium* of a casual employment suggested seems to have been that the work was in part a ministration on the occasion of a temporary illness. The court considered the indicia of a non-casual employment as prevailing.

In *Forrester* v. *Eckerson,* 107 *N. J. L.* 156; 151 *Atl. Rep.* 639, the plaintiff was a painter and was sent by defendant to his home to do "painting and some other jobs." He had done painting and incidental work for defendant at least once before about year previously. The indicia of casual employment were: (1) that there was nothing to indicate that the employment was a regular one in the sense of continuous for

a period of time, as it was to terminate with the completion of the job, or that it was to be renewed or continued at some future time, fixed or indefinite. If other work was ever to be done a new employment would be entered into. (2) No period of time of the employment was specified. (3) The work of painting was not regular like housework, but was desultory and occasional. On the other hand, the *indicium* of non-casual character was that the employment was regular in so far as painting was concerned, as this was the plaintiff's regular occupation. The court held the employment a casual one.

In *Perroni* v. *Farley,* 14 *N. J. Mis. R.* 86; 182 *Atl. Rep.* 353, the petitioner, a laborer by occupation, was employed by respondent to work as a laborer in miscellaneous labor assisting a contractor which respondent had employed to do certain work. No time element was contained in the contract, the respondent being at liberty to discontinue the employment at any time and the petitioner at liberty to quit. The employment only covered the particular job in question. The indicia here that the employment was a casual one were: (1) that there were no binding agreement as to a time the work should continue; (2) there was only one piece of work; (3) the work was not regular from the standpoint of the employer, the employer having engaged a contractor to do it. The *indicium* as to the work being non-casual was that it was regular from the standpoint of the employee, being the work he customarily did. The court held the employment casual.

In *Harrington* v. *Garrison,* 11 *N. J. Mis. R.* 754; 168 *Atl. Rep.* 166, the employee was a skilled household worker who worked for several families and had worked in respondent's household for over ten years with the understanding that she was to be employed therein three days a week, the particular days to be selected by respondent who was to summon petitioner accordingly; compensation was fixed at fifty cents per hour.

It was contended that the employment was casual, as being "neither regular, periodic nor recurring."

The indicia of the non-casual character of the employment present were: (1) that the employment was that regularly

engaged in by petitioner; (2) being housework, it was regularly necessary from the standpoint of the employer; (3) it was regularly required three days every week; (4) it was not for a single piece of work, but continued weekly for years; (5) the "expectation of continuation" was mutual between employer and employee. The only *indicium* of a casual character was that the employment was not continuous in the sense of full-time employment. The court held the employment non-casual.

In *Clausen* v. *Dinnebeil*, 125 *N. J. L.* 223; 15 *Atl. Rep.* (2*d*) 205, the respondent owned six houses, in one of which he made his home. He supported himself on the income from the houses. A wind storm having caused damage to the roof of the one of these houses in which respondent lived, he employed the petitioner, a carpenter, at the wage of $1 per hour for an eight-hour day, to aid him in repairing the damage thus caused. While the two were working together putting on a new roof the petitioner fell from the roof and was injured. Petitioner had done some repair carpenter work for respondent before as necessity arose, but he was not the only carpenter whom the respondent had used. The "occasion and actual employment arose by chance—in this case, damage done to the roof of the respondent's home by the storm." The court held the respondent was not engaged in business.

The indicia of non-casual employment were: (1) the engagement by petitioner in his regular occupation, carpentry, and (2) the fact that respondent was making repairs to a house owned by him. The indicia of the casual character of the work were, (1) the wind storm as a cause of the damage; (2) the employment was for only one piece of work; (3) it was entered upon by specific present arrangement and was not done under any past arrangement covering future work without further engagement, or as part of a recurring employment without further engagement. The court held the employment casual.

The case of *Jasnig* v. *Winter*, 115 *N. J. L.* 320; 179 *Atl. Rep.* 844; *affirmed*, 116 *N. J. L.* 181; 182 *Atl. Rep.* 842, is the one upon which the petitioner seems most strongly to rely.

In that case the petitioner, a seamstress, worked for a housewife. She was paid by the day at a stated daily wage with board and with lodging when remaining overnight at the employer's home. She worked for respondent on the 18th, 19th and 20th of February, 1932, staying overnight on those days, and returning on the 29th, and was to remain over the night of the 29th and continue on the following day, the intervening period between the 21st and 29th containing two Sundays and a holiday. Petitioner's injury occurred on the night of the 29th. She was to work on different dresses on the occasion of the 29th. What the character of the work was on the 18th, 19th and 20th does not appear from the report of the case, nor does it appear whether she had worked for respondent before the 18th, but it appears that a steady and permanent employment was shown from all the evidence presented, since the court expressly found that her employment was "regular, being steady and permanent." The indicia of the non-casual quality of the employment were: (1) the work was in petitioner's regular line of work; (2) it was in accord with respondent's regular occupation to have such work done; (3) the employment was steady; (4) it covered a number of pieces of work; and (5) extended over a substantial period of time. The indicia of casual quality were the nature of the work, viz., that of a seamstress, which ordinarily in a household is contingent on the exigencies of wear and tear, occasional and at irregular intervals. The indicia of non-casual quality were of greater weight, especially in view of the express finding of fact that the work was regular and steady.

Returning to the definition of casual, above quoted, as expressed by our legislature and the explanation thereof by our Court of Errors and Appeals in *Forrester* v. *Eckerson, supra,* we seem to get the following result: Casual employment, when not in connection with any business of the employer, is employment not steady and permanent for more than a single piece of work, or not to be performed at some future time by the same party without further engagement.

Each case seems to stand on its own basis and must be solved in the light of all its own particular facts and surrounding circumstances.

Applying this definition to the facts in the instant case it is obvious that the employment did not fall within the last two categories, *i. e.,* it was not to be performed at some future time by the same party without further engagement and it was not to be performed at stated intervals without further engagement. We have left to consider whether it was regular, viz., steady and permanent for more than a single piece of work.

The indicia in the instant case of the non-casual quality of the employment appear to be as follows: (1) The work was of the character usually done by petitioner and thus regular with reference to the character of the employment; (2) the necessity for help in mending in a household is normally certain to recur as it may accumulate from time to time, and in that sense may be regarded as something regular, though the period of its recurrence would naturally be irregular; (3) the necessity for mending arose in the regular and normal course of the occupation of Mrs. Greenwood, as a housewife.

The indicia of the casual quality of the petitioner's employment seem to be these: (1) The periods when the mending in the household would accumulate so as to require outside help were dependent upon the varying circumstances, accidents and exigencies of the persons making up the household, and were hence normally irregular; (2) the employment was not for any fixed time of substantial duration, such as, an employment for a year, a month, or a period of weeks, but was but for a single day; (3) the petitioner was not the only seamstress who worked for Mrs. Greenwood, there was no element of regularity in the sense of custom. It was a mere matter of speculation as to whether in any particular instance Mrs. Gray would be selected or one of the other seamstresses. On this particular occasion the fact that Mrs. Greenwood believed that Mrs. Gray needed the money seems to have been a factor in her favor in determining her selection; (4) both sides, Mrs. Gray as well as Mrs. Greenwood were at liberty never to renew the relation on completion of the particular batch of mending then on hand, or on the expiration of the day; (5) there was no habit, custom or understanding

calling for performance of work in future by Mrs. Gray for Mrs. Greenwood.

The employment was entirely lacking in steadiness and permanency.

The indicia of the casual quality of the employment outweigh those of its non-casual, and I conclude that the petition must be dismissed.

It appears to have been assumed by both sides on the trial that there was no distinction between the status of the husband and wife in respect to liability. This may be due to the coverage of the insurance policy involved. However, it may be gathered from the entire testimony that the respondent Herbert Greenwood was a business man and that he and his wife, Frances Greenwood, maintained a home in Maplewood over which she presided as its mistress. Under these circumstances there is no reason for a finding against the wife even if the employment had not been casual. The wife merely acted as the agent of the husband in providing necessaries for the household.

Findings may be submitted under rule nine, in accordance with this opinion.