26 N.J. Super. 75 (1953)
97 A.2d 196
GLORIA RUSSELL, PETITIONER-APPELLEE,
v.
THE TORCH CLUB, A CORPORATION, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Hudson County Court Law Division.
Decided May 15, 1953.
*76 Mr. Samuel M. Cole, attorney for respondent-appellant (Mr. Louis J. Greenberg, of counsel).
Mr. Noah Lichtenberg, attorney for petitioner-appellee (Mr. Aaron Gordon, of counsel).
DREWEN, J.C.C.
There was an award of compensation in the bureau and respondent appeals. The one question presented here is whether petitioner's status at the time of the injury was that of an employee or an independent contractor.
Petitioner was an entertainer in the art of song. She was engaged by respondent to perform at a place of public resort owned and conducted by it in Union City and known, in the parlance of our time, as a night club. The engagement was in the form of a written contract, apparently of the sort generally used for the purpose. In it petitioner is called the "artist." She is to "present her act as a principal, consisting *77 of one person, four days weekly, Continental shows daily." She is to receive "Fifty dollars weekly, payable immediately preceding the first performance on the concluding night of each weeks engagement," less 10% commission to the booking agent. Had the writing been permitted exclusively to dominate and control performance of its terms, it is altogether likely that petitioner would have to be considered an independent contractor. But it is plain from the proofs that the contract did not control. Petitioner's freedom for the performance of the service for which she had engaged herself was so drastically and extensively subordinated to the particular wish and purpose of respondent that her real status was manifestly that of an employee and no other.
The engagement began on the night of November 1, 1951. Two nights later the accident and injury occurred. While petitioner was in the dressing room, following an appearance on the stage, her dress caught fire from the open flame of a gas heater and she was severely burned.
Included in petitioner's burden of proof was that of establishing the relation of employer and employee, as against the defense that she was an independent contractor. The status of independent contractor has been clearly defined by our courts:
"An independent contractor is * * * one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work." Reisman v. Public Service Corporation, 82 N.J.L. 464, 466 (E. & A. 1911); Errickson v. F.W. Schwiers, Jr., Co., 108 N.J.L. 481, 483 (E. & A. 1932).
A case in point, having to do with an entertainment contract, is Radio City Music Hall Corp. v. United States, 50 F. Supp. 329 (D.C.S.D.N.Y.), affirmed 135 F.2d 715 (C.C.A. 2, 1943). There the performers were held to be independent contractors, and the trial court's reason for the holding in the first instance is indicated in the following passage from its opinion:
*78 "Even the monologue or dialogue was that of the artist and was not supplemented by the plaintiff, but was subject to deletion if it offended good taste, or was too long to fit into the time allotted to the act."
Judge Learned Hand in the opinion on review in the Circuit Court of Appeals says, at page 717, supra:
"The test lies in the degree to which the principal may intervene to control the details of the agent's performance; and that in the end is all that can be said."
While in cases that present the question there may be a number of elements, some militating for and some against the conclusion of independent contractor, the test in each of them is, who had the right to control, or actually did control, the operation. I think there can be no doubt that the result is the same where control is actually assumed and exercised by the principal, as it was here, without regard to any question of right to such control. In Errickson v. Schwiers Co., supra, the court said, 108 N.J.L. at page 483:
"* * * The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well the result to be accomplished, or in other words, not only what shall be done, but how it shall be done. * * * It will be seen, therefore, that the ultimate question in this case is, who had control of the operation."
The nature and extent of the interference to which a contractual arrangement can be subjected is obviously capable of the widest variety of detail; and the decisions on the subject are sui generis.
In Steel Pier Amusement Co. v. Unemployment, etc., Comm., 127 N.J.L. 154 (Sup. Ct. 1941), the issue was similar to that in the Radio City Music Hall case, supra, the question being whether the company was obligated as an employer to make contributions to the Unemployment Compensation Insurance Fund because of certain musicians who were performing for it. In the latter case the court cited with approval the following pronouncement in Schomp v. *79 Fuller Brush Co., 124 N.J.L. 487 (Sup. Ct. 1940), affirmed 126 N.J.L. 368 (E. & A. 1941):
"The statute * * * is authority for an investigation of the relationship by looking to the contract and also to the incidents and circumstances surrounding the relationship so that it may be determined what the relationship was in fact. * * *"
In the Steel Pier case, supra, the former Supreme Court said, 127 N.J.L. at page 157:
"A reading of the testimony leaves no doubt that the musicians were not free from control or direction of the Steel Pier. They were subject to its control as to the time of performing, and likewise as to what they should play, if the Steel Pier expressed any such desire. They did in fact play dance music or accompaniments as directed. * * * Viewed in the light of actuality, the situation did not differ from the engagement of a group of painters for a specified time, or a group of ushers, merely because the persons involved were musicians."
This statement enunciates the further principle that the particular trade or profession involved exerts no controlling influence in determining the relation. Compare Chmizlak v. Levine, 20 N.J. Misc. 339 (Dept. Labor 1942), where a trained nurse was found to be an independent contractor, with Robinson v. Levy, 20 N.J. Misc. 444 (Dept. Labor 1942), where it was held that claimant's profession as registered nurse did not require the conclusion that she was an independent contractor. And in contrast to the holding in the Steel Pier case, supra, see Laurel Sports Activities, Inc. v. U.C.C. of N.J., 135 N.J.L. 234, 236 (Sup. Ct. 1947), in which it was factually found that the employer had "no direction or control over the services performed by the referees, timekeepers, announcers, boxers and wrestlers."
Now, what was the situation in the case before us? As already stated, the period of petitioner's engagement at respondent's night club covered about three nights. From the outset there is manifest a complete dominance by respondent's "master of the revels," one DeFrancis by name. He was the piano accompanist, who performed with petitioner *80 and the other soloists. DeFrancis took over control and direction of petitioner's performing in very positive ways. Songs that she had been especially trained to sing he would not permit. Arrangements of song music especially made, with the design of achieving a performance individual to her, were compulsorily discarded. Songs in petitioner's repertoire were rejected by DeFrancis, who gave as his reason that they were not "commercial," which must mean that they did not come within his own approval as appropriate to the place and its patronage. More seriously, the same DeFrancis expressly required that petitioner, between performances, mingle with the patrons, sit at the bar and drink with them. Her testimony is that she had not at all intended doing anything of this kind, nor had thought of it, when she made the engagement, but did it when required to in order to hold the employment. The person first in authority at the club was one Klonck. When petitioner arrived on the night of November 1, Klonck was not present and all orders were given by DeFrancis, whose authority is in no way questioned. "Joe, the bartender," too, was vested with a measure of direction; he also, according to petitioner, told the performers what to do, especially in the passing up of request numbers.
Petitioner's testimony is virtually uncontradicted. DeFrancis was not called as a witness, and I find Klonck's testimony, so far as it goes, evasive and unsatisfactory. According to Klonck, not even that feature of the contract providing for compensation was adhered to. Petitioner has not yet been paid for her three nights' performance, and Klonck would attribute the delinquency to some custom of the trade requiring payment through the petitioner's agent, though it appears that the agent has not yet been paid either.
All cases cited by appellant are readily distinguishable. Franklin v. Maine Amusement Co., 133 Me. 203, 175 A. 305 (Me. 1934), was an action in tort for personal injuries. Miller and Rose v. Rich, 195 Wis. 468, 218 N.W. 716 (Wis. 1928), involved a compensation claim by a widow. Her husband had been a professional entertainer with an act *81 entitled "Slide for life," which he had contracted to present in an amusement park. The court reviews, at page 716, the "outstanding facts," according to which there can be no doubt that the performer's status was that of an independent contractor. At the same time the court makes it plain that its holding
"* * * does not mean that there are no artists or performers under compensation. Many such are under contracts of hire to render service under the control and direction of an employer. * * * We are not unmindful of the rule that the Compensation Act is to be liberally construed to carry out its humane purposes; but to include within its provisions actors and performers of the class suggested would be subversive of the intent and purpose of the law." [218 N.W. at page 717.]
Edwards v. Alhambra Theatre Co., 198 Wis. 228, 224 N.W. 104 (Wis. 1929), was a suit for personal injuries by the proprietor of an exhibition called the "Old Movie Show." The plaintiff tripped on the stage and was injured. The decision has no bearing on our problem and is not at all helpful.
A number of cases relating to professional entertainers are discussed in 158 A.L.R. 915 and 172 A.L.R. 325. The import of these annotations is that in the main reliance is had upon the familiar test of direction and control. The use of technical or special designations like "artist" and "principal" are not ruling factors in the problem. In El v. Newark Star-Ledger, 131 N.J.L. 373 (Sup. Ct. 1944), the contract designated petitioner "an independent contractor." The court noted other features of the contract repugnant to such status for petitioner and said, at page 379,
"But be that as it may, we are not so much concerned with the formal wording of the instrument characterizing the status of the parties as we are with the factual relation between the parties, the true determinative of their status."
Appellant contends prejudicial error was committed by the deputy director in refusing to permit testimony "that there were no deductions made for social security, unemployment *82 or old age benefits." In Cappadonna v. Passaic Motors, Inc., 136 N.J.L. 299, 301 (Sup. Ct. 1947), affirmed 137 N.J.L. 661 (E. & A. 1948), the former Supreme Court noted: "No deductions were made for Social Security nor for unemployment compensation." It is readily conceivable that this circumstance might in a given situation become a makeweight of negative proof, yet I cannot see how such evidence could change the result here, where respondent's control and direction were well-nigh absolute.
I find that petitioner, for the reasons set forth, was at the time of her injury an employee of respondent, and that she is entitled to the award of compensation made her by the deputy director. The same award is made on the trial de novo here.