75 N.J. Super. 295 (1962)
183 A.2d 124
FRED F. PETRONE, PETITIONER-APPELLANT,
v.
KEVIN KENNEDY, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 15, 1962.
Decided June 28, 1962.
*296 Before Judges CONFORD, GAULKIN and KILKENNY.
*297 Mr. Mortimer Wald argued the cause for appellant (Mr. Frederick M. Raffetto, attorney).
Mr. Samuel A. Bloom argued the cause for respondent.
The opinion of the court was delivered by GAULKIN, J.A.D.
Petitioner, a carpenter, was injured while building an extra room on respondent's dwelling. He was awarded workmen's compensation in the Division. The County Court reversed, holding that petitioner was an independent contractor. Petitioner appeals, contending he was a mere employee. In support of the judgment below, respondent argues that petitioner was indeed an independent contractor, and, even if he was not, he was merely a casual employee as defined in N.J.S.A. 34:15-36, and therefore, in either event, he was not covered by the Workmen's Compensation Act.
The respondent came to know the petitioner when the petitioner, an employee of Tower Construction Co., was working as a carpenter in connection with a renovation job being done by Tower at the respondent's home. This was four years prior to the date of the accident in issue. Another employee of Tower at that time was Santo Tocco. After the Tower job, respondent engaged the petitioner individually to do some minor carpentry and repair jobs for him at his home on various occasions. At various times during 1957 the petitioner enclosed a fuse box and meter, installed a louvre over an opening in the cellar, repaired some doors and screens and blocked out the lower section of book shelves in the living room. In the spring of 1958 he repaired a fence and stable, playhouse and play equipment, built a spy tower for the playhouse, and installed gutters on the barn. In the fall of 1958, he enlarged the meter box enclosure and repaired more screens, and doors. In the spring of 1959 he made a post and rail fence for the respondent. On each of these occasions the arrangements were the same. No estimate was given by the petitioner, but he *298 did what he had to do at an hourly rate of pay, used his own tools, and the respondent supplied the materials. The petitioner was not in business for himself because he was regularly employed by Tower, and these were odd jobs which he did after hours or on days off to supplement his income.
In May or June of 1959 Mrs. Kennedy was expecting the birth of another child, as a result of which Mr. and Mrs. Kennedy made plans to extend the second floor area of their home and to construct an additional bedroom over the kitchen. Mr. Kennedy acted as his own architect, although he is in the advertising business, drew rough plans, and phoned the petitioner who came to see him. He inquired as to what it might cost for labor and materials to build this extra room and was told by the petitioner that as far as labor was concerned the petitioner would expect the union rate of $3.50 an hour; and, after making inquiries at the lumber yard as to the cost of materials, he advised Mr. Kennedy that labor and materials would come to somewhere between $2500 and $3000. He also advised Mr. Kennedy that if he wanted the room done by November 1959, when the child was expected, it would be necessary for the petitioner to have extra help. Santo Tocco was engaged to give this additional help. Materials were ordered from the lumber yard by Mr. Kennedy. No specification of the materials was necessary because the lumber dealer knew exactly what was needed to satisfy the requirements of the plan. The record does not indicate when work began. The petitioner and Tocco worked evenings after their regular hours of employment, and on weekends.
There was no supervision by Kennedy over the work effort of the petitioner and Tocco, since they were experienced carpenters who knew the result desired by the Kennedys and were able to do the work without being told how by the Kennedys. Indeed, the Kennedys were away for their vacation during August, when the accident happened. Petitioner and Tocco had their own tools. They used the *299 respondent's ladder, a hacksaw and a vise. Before work actually began, the Kennedys made one change in the plan by providing for two separated windows, where the original plan called for a double window. They did not direct the operation, and although they reserved the right to make any changes in the plans as the work progressed, they made none beyond the initial change in the windows before the work began. The understanding as to payment was that the Kennedys would pay the bills for the materials directly and would pay the petitioner and Tocco $3.50 per hour each for their labor. The parties agreed that the labor charge would be paid upon completion of the job.
On August 18, 1959 petitioner's two-weeks vacation from his regular job began, and it was his intention to devote his vacation period to the work on the Kennedy home. On that day, while striking a nail, the nail bounded back and caused the damage to his eye for which the award was made. There is no dispute as to the nature and extent of his injury and disability, or as to his hospital and medical expenses. The issue is solely one of liability.
As we said in Berkeyheiser v. Woolf, 71 N.J. Super. 171 (App. Div. 1961):
"Overlapping between casual employees and independent contractors is common and it is not unusual that a petitioner falls into either or both unprotected classes. Brown v. Grand View Auditorium, Inc., 17 N.J. Misc. 319, 8 A.2d 821 (Dept. Labor 1939). Accordingly, our primary concern is not so much into precisely which class this part-time repairman falls, but rather whether he qualifies as a member of the protected group of workmen within the fair meaning of the statute."
The right to workmen's compensation of those who do maintenance, repair and construction for householders or for others not in connection with their business, has been considered in a number of New Jersey cases. Berkeyheiser v. Woolf, supra; Glidear v. Charles, 11 N.J. Super. 523 (App. Div. 1951), affirmed o.b. 7 N.J. 345 (1951); Stein v. Felden, 17 N.J. Super. 311 (App. Div. 1952); Larson *300 v. Hergert, 5 N.J. Super. 367 (App. Div. 1949); Gray v. Greenwood, 21 N.J. Misc. 137 (C.P. 1941), affirmed 129 N.J.L. 596 (Sup. Ct. 1943); 130 N.J.L. 558 (E. & A. 1943); Clausen v. Dinnebeil, 125 N.J.L. 223 (Sup. Ct. 1940); Forrester v. Eckerson, 107 N.J.L. 156 (E. & A. 1930). See also Annotation, 107 A.L.R. 934 (1937); Amundsen v. Poppe, 227 Minn. 124, 34 N.W.2d 337 (Sup. Ct. Minn. 1948).
The general rule to be deduced from our cases as well as those in other states has been stated by Larson (1 Larson, Workmen's Compensation Law (1952), §§ 50.21, 50.22, pp. 737-738) to be that although "[t]he injured person is admittedly an employee who has suffered an accident in the course of his employment and who presents exactly the same social problem as the injured factory worker. * * * [t]he courts have consistently held that compensation acts do not apply in such instances * * *. The exact statutory provisions that have been called upon to support this result have varied, but there has been little variation in the result itself." The reason for this rule, says Larson,
"* * * can best be approached by imagining a set of facts which could easily happen to any average householder. Let us suppose that you are a lawyer, owning a modest home, and living on a modest income, and that you have hired a neighbor boy to mow your lawn for seventy-five cents an hour. While the boy is attempting to adjust the bed of the power-mower with the blades turning, his screwdriver slips and both his hands are badly cut by the blades. Complications develop, and both hands are lost, making the boy totally and permanently disabled. Would you, as a lawyer  with, we will assume, a special consciousness of compensation law  expect to assume workmen's compensation liability in the circumstances, amounting to perhaps fifty thousand dollars? If not, what statutory provisions stand between you and this financial catastrophe?
Exactly the same question arises whenever you get a leak in your roof fixed, or call in a practical nurse to stay with a sick child, or hire a guide on a fishing trip, or employ a mechanic friend to help you fix your car, or pay a handyman to put up the storm windows.
It would undoubtedly come as an unwelcome and violent shock to anyone, including those most keenly aware of the problem from *301 the injured employee's point of view, if he should find himself subjected to a compensation liability in any of these instances."
See also Larson, § 50.25.
However, Larson points out that even work for a householder may "become covered through its sheer regularity and duration." He says:
"The * * * result is reached in New Jersey * * * upon a special statute which makes the decision somewhat easier. The New Jersey statute is greatly superior to the usual casual-employment statute in that it frankly recognizes the use of this type of provision for two somewhat different purposes  one, to rule out non-business activities such as those being presently discussed, and two, to rule out employments by regular businesses which are unpredictable and unexpected, and sets separate standards for each. The exemption clause reads as follows:
`* * * exclusive of casual employments, which shall be defined, if in connection with the employer's business, as employment the occasion for which arises by chance or is purely accidental; or if not in connection with any business of the employer, as employment not regular, periodic, or recurring [N.J.S.A. 34:15-36].'
In the case of a non-business employment, then, such as building a residence for personal use, the statute makes it plain that the act applies if the employment is regular. A carpenter who had worked regularly every day for over two months on the construction of a new residence was, under this statute, held covered by the act [in Glidear v. Charles, supra]."
As to whether petitioner's employment was casual, the facts of the case at bar place it between Stein v. Felden, supra, in which the employment was held to be casual, and Glidear, supra. In Stein the petitioner was hired with another carpenter to replace a single window in respondent's bedroom with two windows. Respondent was in the plumbing and heating business, occasionally hired carpenters in connection with that business, kept a stock of carpentry materials in the building in the rear of his house, maintained his office in the house, and knew how to lay out carpentry jobs. He laid out the work to be done by Stein and his co-worker, but they supplied their own tools and *302 erected their own scaffold. The opinion does not say how long the job was to take. Although he had been a carpenter for 53 years, Stein had had no regular employment for three years before the accident, but had been doing "odd job" work. We held (17 N.J. Super., at p. 319) "[t]he evidence amply supports the finding below that petitioner was engaged only to alter the window and that the engagement was to terminate when that alteration was completed."
So here, the engagement was to terminate when the alteration was completed.
Do the facts in this case come so close to those in Glidear that they entitle petitioner to coverage? We think not. In Glidear the construction was of an entire new residence. The petitioner worked full time on it, and had no other job. He worked daily from mid-September until November 24, when he was injured. He was hired to work until completion, which would have been a "substantial" time after the date he was injured. The court said that Glidear's employment was "regular, periodic and recurring" because
"It seems clear that in the case sub judice petitioner was not employed for a single piece of work, nor for a single job, in any sense indicative of casual employment. He was hired for a substantial residence construction project of unestimated duration except its completion. The work was in his regular trade and inferably required his carpentry skill in the broad area of framing, exterior, interior, rough and finished work. He was paid weekly on a daily rate, and he had worked steadily for ten weeks before he was injured. Even then his employment was not ended because the house was not yet complete. What elements of `regular' employment in the usual or statutory sense of a `steady, permanent' nature are lacking here? We perceive none. The term of petitioner's employment was the completion of the construction and we surmise in his work as a carpenter this indicated as steady and as permanent an employment as is found usually in the trade." (Emphasis ours)
Here there was only one room to be added. Petrone worked for respondent only in his spare time, when and as he chose. We do not know how long the job *303 would have taken had petitioner and Tocco worked full time. Apparently his only deadline was to be finished in time for the occupancy and furnishing of the room before the baby was born. Petrone's work for the Kennedy's was too sporadic to be called "regular, periodic or recurring" within the meaning of the statute. In Forrester v. Eckerson, 107 N.J.L. 156, 158 (E. & A. 1930) the court said:
"The words, as used in this act, connote that employment is regular when it is steady and permanent for more than a single piece of work; recurring, when the work is to be performed at some future time by the same party, without further engagement; and periodic, when the work is to be performed at stated intervals, without further engagement."
We hold that the extent and duration of the job were not so great as to take it out of the rule usually applied to repair and construction for householders, and to remove it from the category of "casual" into that of "regular" employment.
When we deal with business employers, "[o]ur act is construed to bring as many cases as possible within its coverage," Hannigan v. Goldfarb, 53 N.J. Super. 190, 195 (App. Div. 1958). Cf. Graham v. Green, 31 N.J. 207 (1959). However, as Larson says (§ 50.25, p. 745), we should be slow "to impose Workmen's Compensation liability on householders, either by judicial decision or by statutory extension * * *."
Also, we agree with the County Court that Petrone was an independent contractor within the meaning of the Workmen's Compensation Act. Condon v. Smith, 37 N.J. Super. 320 (App. Div. 1955), affirmed 20 N.J. 557 (1956); Cappadonna v. Passaic Motors, Inc., 136 N.J.L. 299 (Sup. Ct. 1947), affirmed 137 N.J.L. 661 (E. & A. 1948); Otmer v. Perry, 94 N.J.L. 73, 74-75 (Sup. Ct. 1919).
As we said in Berkeyheiser, supra, 71 N.J. Super., p. 176:
*304 "For compensation purposes, the independent contractor group encompasses those who do a piece of work according to their own methods without being subject to the employer's control as to the means by which the work is to be done."
This definition is pertinent to the situation in the case at bar. As we have pointed out, the Kennedys exercised no control whatever over the method and means by which the work was to be done. Indeed, they were away when the accident happened and for some time before. It is true that Petrone and Tocco were to be paid by the hour, but it is to be noted that they were not to be paid until the end of the job. In addition, mere payment by the hour is not inconsistent with the status of independent contractor. While the absence of the exercise of control in fact may not be important where, as here, the workman's skill is such as not to require control (Marcus v. Eastern Agricultural Ass'n, Inc., 32 N.J. 460 (1960), which adopted the dissenting opinion in 58 N.J. Super. 584, 597 (App. Div. 1959); Brower v. Rossmy, 63 N.J. Super. 395 (App. Div. 1960), certif. den. 34 N.J. 65 (1961)), the facts nevertheless must justify an inference of the right of control, even though not exercised in fact in the particular case. Mahoney v. Nitroform Co., Inc., 20 N.J. 499, 506 (1956).
The following words used in Berkeyheiser, supra, 71 N.J. Super., at p. 177, are apt here:
"The present plaintiff had a regular and permanent full-time job elsewhere at a substantial salary. He had no expectation of regular and steady employment by the respondent. The odd jobs he did for respondent occurred at irregular and isolated occasions and only when the need arose. Petitioner did not perform the repairs on a regular schedule, but he himself chose the times when he would appear to make the repairs. The very irregularity of the work and petitioner's economic independence distinguish this case from Marcus.
We conclude that the character of the work was such as to preclude petitioner from the right to compensation under the Workmen's Compensation Act. We have accepted all his factual contentions as true, but they do not establish the essential existence *305 of an employer-employee relationship. Whether he was more a casual employee or an independent contractor need not be decided. There is no merit to petitioner's claim that would justify an award, either within the letter or spirit of this remedial legislation."
The judgment is affirmed.