111 N.J. Super. 125 (1970)
267 A.2d 568
EVA GRANT, PETITIONER-APPELLEE,
v.
BLAZER COORDINATING COUNCIL OF YOUTH DEVELOPMENT, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided June 17, 1970.
*127 Mr. Irving Silverman for petitioner-respondent (Messrs. Jacobson and Silverman, attorneys).
Mr. Martin B. Wallerstein for respondent-appellant (Messrs. Morgan, Melhuish, Monaghan, McCoid and Spielvogel, attorneys).
YANCEY, J.C.C.
This case is an appeal from a judgment of the Division of Workmen's Compensation. The facts are not in dispute. Petitioner Eva Grant sustained injuries when she slipped and fell at the food preparation center of respondent-appellant Blazer Coordinating Council of Youth Development.
At the time of the accident petitioner was a trainee in the Blazer Work Program. She had been participating in this program for 1 1/4 years. Respondent is a work-training program which is funded primarily by the Office of Economic Opportunity. As part of its entire operation respondent created the Blazer Work Training Program. This program was funded expressly to train "Title 5" students. "Title 5" is a work experience program which is an arm of the Department of Welfare of the City of Newark. The purpose of the Blazer Work Training Program was to coordinate a program in conjunction with the "Title 5" of Newark to make welfare recipients employable.
At the time of the accident petitioner was a welfare recipient. She was sent to respondent's Blazer Work Training Program by the Department of Welfare of Newark. Most trainees in the Blazer Work Training Program were in fact referred to respondent by "Title 5" of the Department of Welfare. While trainees were in this program they received their regular assistance check from "Title 5" of *128 the Welfare Department and an additional $44 to $50 per month for lunch money, transportation and other expenses involved in participating in the program.
Respondent is a nonprofit organization. It maintains several schools in the Newark area for the purpose of training the individuals referred to them. One of their schools was designed for instruction in the preparation of food and catering. The trainees were taught how to prepare foods and how to serve them. To implement the program a lunch kitchen was opened by the food preparation section of Blazer. The restaurant so formed was not federally funded; rather, it obtained its original support from the individual staff members who contributed $33 to $35 each to the program. The monies taken in from persons who purchased their luncheon at respondent's restaurant were funneled back into the program for purchase of further foodstuffs. Eventually the food-serving program became self-supporting.
At the time of the injury petitioner was a trainee in Blazer. She slipped and fell while serving tables at respondent's restaurant. Her total income at that time consisted of $84 a month from the Newark Department of Welfare, plus an additional $44 a month she received for the expenses incurred while working in the program. The only other income petitioner received was tips which she made while serving lunch at the Blazer Food Preparation Center. At a hearing in the Division of Workmen's Compensation there was an award of temporary and permanent disability.
Appellant's first contention is that an employer-employee relationship did not exist between it and petitioner. This relationship is the essential basis of recovery under the Workmen's Compensation Law. Heget v. Christ Hospital, 26 N.J. Misc., 189 (C.P. 1948). Krause v. Hamline University, 243 Minn. 416, 68 N.W.2d 124 (Sup. Ct. 1955); 1A Larson, Workmen's Compensation Law, § 47.43(a) (1967). A number of tests are used to determine whether an employer-employee relationship exists.
*129 The payment of wages may be one of the elements of proof in determining whether a relationship of employer-employee exists at a particular moment for the purposes of Workmen's Compensation, but it is not a controlling factor. The Court will also consider the factors of hiring, control, and power of dismissal, with control being the single most important factor. [Silagy v. State of New Jersey and County of Mercer, 101 N.J. Super. 455, 459 (Cty. Ct. 1968), aff'd 105 N.J. Super. 507 (App. Div. 1969)]
1A Larson, op. cit., § 44.00.
In the present case there is no conclusive evidence that petitioner received any sort of wages from appellant. Quite to the contrary, appellant is a nonprofit organization designed as a training school for unemployable welfare recipients. Its function was not to be in the restaurant business but to operate a training school. Nevertheless, our Compensation Act does not limit the term "employee" to narrow, common law concepts or ordinary wage earners because it also "includes all natural persons * * * who perform services for an employer for financial consideration." N.J.S.A. 34:15-36. Gross v. Pellicane, 65 N.J. Super. 386, 394 (Cty. Ct. 1961). "Financial consideration" has been held to include anything of value to be received in return for services rendered, but not hope of future favors. N.J.S.A. 34:15-7, 36. Hawksford v. Steinbacher Packing Co., 73 N.J. Super. 175 (Cty. Ct. 1962), aff'd 80 N.J. Super. 129 (App. Div. 1963); 1A Larson, op. cit., § 47.43(a), at 784-5. Food and lodging were held to constitute "financial consideration" in the case of Johnson v. Industrial Commission, 88 Ariz. 354, 356 P.2d 1021 (Sup. Ct. 1960). In Johnson prisoners from the county jail were loaned to a private corporation to perform work for it. They were at all times under the direction of the corporation's employees. The prisoners received no wages but were provided with food, lodging and sundries while they worked. Those prisoners who volunteered for such work were given three days' credit on their sentences for each day they worked for the corporation. The court held that such a prisoner was an employee of the corporation while working, and any injury he received while *130 working was compensable under the Workmen's Compensation Act.
The landmark decision in New Jersey, Heget v. Christ Hospital, 26 N.J. Misc. 189 (C.P. 1948), held that a student nurse who performed services for a hospital and who in exchange received room and board while participating in a training program was an "employee" within the meaning of the compensation act. In Heget the student nurses were required to participate in a training program for three years, during which time they were to receive no wage compensation except room, board and incidentals. Their duties included being assigned to patients to take temperatures and to give bed pans, enemas, hypodermics, medicines and such other treatments as were necessary. Similarly in the case at bar, petitioner worked at the food preparation center as a waitress and was required to serve people who came into the restaurant as well as the trainees at appellant's school. In addition, she at various times would also collect cash at the register from the customers of the restaurant. The Workmen's Compensation Division held that Heget v. Christ Hospital, supra, controlled this matter and found that petitioner was an employee of appellant at the time of her injury and was therefore entitled to workmen's compensation. This court is in agreement with that ruling. Although she received no wages from appellant, petitioner was always subject to the control of the supervisors of the Blazer Training Program and was always required to follow their directions. While she performed the services of a waitress, she received $44 a month from appellant to cover her expenses. In addition, petitioner was given instructions in the serving and preparation of food.
The public policy of the Workmen's Compensation Act calls upon the courts to construe and apply the act liberally in order to bring as many cases as possible within its coverage. Hannigan v. Goldfarb, 53 N.J. Super. 190 (App. Div. 1958); Biglioli v. Duratest Corp., 44 N.J. Super. 93 (App. Div. 1957); Gross v. Pellicane, 65 N.J. Super. 386 *131 (Cty. Ct. 1961). In keeping with this policy, I find that petitioner's position as a trainee in the Blazer Training Program meets the technical requirements of the term "employee," as used in the Workmen's Compensation Act.
Appellant further contends that it cannot be considered an employer of petitioner because it is a nonprofit organization. The restaurant has become self-sustaining by using the cash it receives from its customers to cover the costs of operating the school. Bearing this in mind, the test is still not whether the employer is in business for profit but whether it is in business at all. If the employer supplies a product or service, it is immaterial what it does with its profits, or whether the employer expects or gets any profits at all. 1A Larson, op. cit., § 50.44(a), at 903.
Appellant's second argument is that the Compensation judge erred in the computation of the award. The normal unit by which benefits are measured consists of a fixed statutory percentage, usually between one-half and two-thirds of "average weekly wage." The computation of average weekly wage is frequently based upon actual wages during the preceding year, if the claimant's employment has been substantially continuous. 2 Larson, op. cit., § 60.00, at 88.175. In New Jersey, the payment of workmen's compensation is usually based upon a contract of employment of which the terms of the act are a part. If the workman is injured, he is entitled to be compensated for such injury under the act, but based largely on his rate of pay. N.J.S.A. 34:15-44. DeLorenzo v. Newark Board of Comm'rs, 134 N.J.L. 7 (E. & A. 1946).
The Division found that petitioner received a gross of $128 a month for participating in the training program, and gave her an award based on the constructed wages of $39.54. The $128 a month consisted of a regular welfare payment of $84 a month, which petitioner received prior to her participation in the training program, and an additional $44 a month which she was paid only during the time she was in the program in order to cover the extra *132 expenses she incurred while participating in the program. Appellant contends that the $84 a month welfare payment should not have been used as a basis for the compensation award.
This court cannot see how a welfare payment can be considered to be remuneration or wages. Petitioner received the $84 a month from the Newark Department of Welfare. This was not a payment for services rendered by petitioner but rather a transfer payment made by the government to insure an individual of a subsistence living.
The term "wages" is defined in Black's Law Dictionary (4th ed. 1951) as
A compensation given to a hired person for his or her services; the compensation agreed upon by a master to be paid to a servant, or any other person hired to do work or business for him. * * * Every form of remuneration payable for a given period to an individual for personal services, including salaries, commissions, vacation pay, dismissal wages, bonuses and reasonable value of board, rent, housing, lodging, payments in kind, tips, and any other similar advantage received from the individual's employer or directly with respect to work for him. [at 1750].
The welfare payment could not by any stretch of the imagination be considered wages paid to petitioner by appellant Blazer Coordinating Council of Youth Development. She did not perform any service for the Welfare Department, nor was any advantage received by it while petitioner was in this program. Since a workman's wages or rate of pay is used as the basis for making a workmen's compensation award, I am of the opinion that the monthly welfare payment should not have been used in computing the compensation award. See DeLorenzo v. Newark Board of Comm'rs, supra; 2 Larson's Workmen's Compensation Law (1969) § 60.00.
In a compensation case, the entire philosophy of the legislation assumes that the worker is in a gainful occupation at the time of injury. The essence of compensation protection is a restoration of a part of the loss of wages which are assumed to have existed." 1A Larson, op. cit., § 47.10, at 754.
*133 This court therefore finds that the only income petitioner received which can be considered as financial consideration or wages paid by appellant, is the $44 a month she received from appellant for expenses plus the tips she received while waiting on tables. I therefore determine that petitioner's constructed wages were $17 per week ($11 per week for expenses plus $6 per week in tips.)
In view of the foregoing, I make the following determinations:
1. Petitioner was in the employ of appellant on October 25, 1966, on which date she sustained personal injury when she slipped on some grease on appellant's floor and fell. She is therefore entitled to compensation under the statute, N.J.S.A. 34:15-1.
2. Petitioner's wages were $17 per week, which she received for expenses from appellant, plus tips, making the temporary and permanent disability compensation rates $12 and $12 per week, respectively.
3. The permanent disability resulting from said accident is orthopedic in nature, involving petitioner's back and right leg, and neursopsychiatric in the nature of an anxiety state, and the extent thereof I find and determine to be 10% loss of use of the right leg (27 1/2 weeks), and 4% of total, orthopedic and neuropsychiatric (22 weeks), aggregating 49 1/2 weeks at $12 per week, amounting to $594.
The temporary disability, resulting from said accident for the period of November 1 to December 20, 1966, seven weeks at $12 per week, amounts to $84.
Appellant is to pay the reasonable bills of Dr. Chase and Dr. Washington, upon presentation of itemized bills, for medical care and treatment, and petitioner's attorney, Louis C. Jacobson, a counsel fee of $300, and the stenographic fees involved of $90.
Petitioner will pay Dr. Sidney Keats $25 for his examination and report and Dr. Samuel L. Pollock $25 for his examination and report.