261 N.J. Super. 316 (1993)
618 A.2d 906
AETNA INSURANCE COMPANY, PLAINTIFF-APPELLANT,
v.
TRANS AMERICAN TRUCKING SERVICE, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 13, 1992.
Decided January 14, 1993.
*318 Before Judges PETRELLA, LONG and KEEFE.
Staehle & DeSanto, attorneys for appellant (William E. Staehle, on the brief).
Giordano, Halleran & Ciesla, attorneys for respondent (Michael J. Canning, of counsel and on the brief).
The opinion of the court was delivered by PETRELLA, P.J.A.D.
Aetna Insurance Company (Aetna) appeals from the denial of its motion for summary judgment and the grant of Trans American Trucking Service's (Trans American) cross-motion for *319 summary judgment on its counterclaim. Aetna instituted suit in 1989 to recover for what it claimed as additional workers' compensation insurance premiums for Trans American's 1986-1987 policy period.[1] Trans American denied owing additional premiums, and counterclaimed for reimbursement of $38,938.48 in contested additional premiums on the preceding year's policy.
Notwithstanding that it had moved for summary judgment, Aetna now takes the position on appeal that the record on which the motion judge dismissed its complaint and entered summary judgment in favor of Trans American "was totally inadequate."[2] Aetna claims entitlement to additional premiums for the workers' compensation insurance policy because the yearly premium charged at the beginning of each policy period represents an estimate which is subject to adjustment at the end of the policy period based upon Aetna's actual exposure during that period. To assist Aetna in determining if potential liability was more or less than "estimated," its policy provides for an audit of its insured's records relating to risks covered by the policy. One such record Aetna examines is the insured's payroll for the policy period to determine the number of covered employees.
In the case of an insured which operates a trucking company, when Aetna cannot gain access to what it considers all payroll records for its audit, it adjusts the premium by a formula in § 3:3-46 of the New Jersey Workers' Compensation and Employers' Liability Insurance Manual,[3] (hereinafter "Workers' *320 Compensation Manual") compiled by the Compensation Rating and Inspection Bureau (Bureau).[4] This section contains what is referred to by the parties as the "hired vehicle rule," and provides:

46. Hired Vehicles. If vehicles, including drivers, chauffeurs and helpers are employed under contract and if the owner of such vehicles has not insured its compensation obligation and furnished evidence of such insurance, the actual payroll of the drivers, chauffeurs and helpers shall be included in the payroll of the insured employer at the proper rate for the operations in which the insured employer is engaged. If such payroll cannot be obtained, one-third (1/3) of the total amount paid for the hire of such vehicles under contract shall be considered as the payroll of the drivers, chauffeurs and helpers. If the proprietor or partners[[5]] who own the vehicles are also drivers, one-third (1/3) *321 of the contract amount for the vehicles operated by such proprietor or partners shall be included in the payroll of the insured employer. Such amounts shall exclude fuel surcharge costs, in accordance with Interstate Commerce Commission regulations provided the employer's books and records are maintained to show such costs separately and in summary. [Emphasis supplied].
The dispute giving rise to this case stems from Aetna's attempts to charge Trans American additional premiums (under the hired vehicle rule) based on Trans American's use of outside truckers or independent contractors in addition to its regular full-time drivers.[6]
Aetna audited Trans American's books and records for the 1984-1985 policy period, including those relating to independent contractors, and did not charge any additional premiums for them for that period.[7]
For the 1985-1986 policy period, Aetna again audited Trans American's records, but this time it billed Trans American $38,938.48 for coverage of the "independent contractors." Trans American paid that amount.[8] It says it objected to the additional charge, but paid under protest after Aetna threatened to cancel all of its insurance unless full payment of the *322 disputed amount was made. Aetna contends that Trans American paid the sum without reservation and sought reimbursement only after being charged an additional premium for the next policy period.
Trans American took the position when Aetna conducted the 1986-1987 policy period audit that Aetna could not examine records pertaining to truckers used under its independent contractor program because it did not have to provide workers' compensation coverage for them. As a result, Aetna used the amount from the previous policy period and applied the formula for hired vehicles to arrive at an additional premium for that policy period of $47,714.[9] Trans American refused payment and suit by Aetna ensued.
During pretrial discovery, Trans American propounded certain interrogatories upon Aetna concerning the independent contractor issue. The relevant questions and Aetna's responses were:
42. Whether Aetna contends that Trans American Trucking Services, Inc. is required to pay premiums for independent owner operators. If so,
a) Set forth the factual and legal basis for Aetna's position.
[Aetna's response] See policy manual attached and case law attached.[[10]] Aetna contends that the defendant is required to pay premiums for independent owner operators if they do not have their own insurance coverage. Same is pursuant to the New Jersey Workers' Compensation and Employers' Liability Insurance Manual Part Three, Section 3, page 9, effective January 1, 1982. See copy attached.

*323 43. Whether Aetna contends that Trans American Trucking Services, Inc. is required to pay premiums for its worker's compensation policy for independent contractors. If so,
a) Set forth the legal and factual basis for Aetna's contention.
[Aetna's response] Aetna contends that the defendant is required to pay premiums for independent owner operators if they do not have their own insurance coverage. Same is pursuant to the New Jersey Workers' Compensation and Employers' Liability Insurance Manual Part Three, Section 3, page 9, effective January 1, 1982. See copy attached.
44. Set forth whether Aetna contends that the independent owner operators used by Trans American Trucking Services are independent contractors.
[Aetna's response] They are treated as independent contractors because they are not listed on Trans American payroll as employees and since the review of Trans American's records indicates that they are independent contractors.

* * * * * * * *
50. Set forth whether the claimed premium to be due and owing includes independent owner operators.
[Aetna's response] Yes. The predominant amount of money sued for stems from premiums due for independent contractors on the workers compensation policies ($44,141.32 out of the total outstanding of $49,275.06). The balance due is on other various policies.
51. Set forth what amount of the premium claimed to be due and owing is attributed to independent owner operators.
[Aetna's response] Almost the entire amount due and owing for workers compensation insurance stems from charges for independent contractors. This amount is an approximate since an audit has not been conducted. [Emphasis supplied].
Aetna contends that these "outside truckers," the majority of whom are unincorporated sole proprietors (who would not otherwise be required to have workers' compensation coverage, see N.J.S.A. 34:15-1, 34:15-36 and 34:15-71),[11] qualify as Trans American employees who must be covered by its workers' compensation policy essentially because it says the Workers' Compensation Manual says so. Hence, Aetna adjusted the premium upward to reflect the higher number of covered *324 persons which resulted when it included "outside truckers" as Trans American employees.
We recognize that the insurance policy here provides that Aetna can rely on its manuals to set rates and classifications. Some manual is relied on in the policy, but the record does not indicate specifically what Aetna's manual is, or as the motion judge noted, the actual basis and method of calculation of Aetna's claimed rate charges. It appears that the manual Aetna relied on is the Workers' Compensation Manual discussed above.
Trans American considers these outside truckers to be independent contractors for whom it has no obligation to provide workers' compensation coverage. It hires outside truckers using its Independent Contractors Agreement which provides, among other things: Trans American assumes no responsibility for the leased equipment; the "[c]ontractor shall direct its operation in all respects including, but not limited to, such matters as rejection and selection of any loads, days and time of operation, routes to travel, repair of equipment, trip leasing, selection, discipline and discharge of its employee drivers"; the contractor has the duty to repair the equipment at his or her own cost, as well as pay for all fuel and oil; the contractor bears the responsibility for paying the wages of drivers, "who shall not be considered as an employee of" Trans American; the contractor must pay for the costs of "unemployment insurance and the withholding of employment taxes, social security taxes and insurance or other benefits as required by any federal, state or local government on account of driver, driver's helpers, or other workers ..."; that the contractor and its employees shall not for any purpose be deemed to be agents or employees of Trans American, "but the contractor is and shall be an independent contractor and is subject to [Trans American] ... merely as to the results to be accomplished and not as to the means and methods for accomplishing the results"; and "the lessor undertakes and agrees to keep records of, and pay all social security taxes, insurance premiums, unemployment *325 insurance taxes, workman[']s compensation insurance premiums, and any and all other payroll withholding and similar taxes.... [D]rivers shall be the lessor[']s employees...." (Emphasis added.)
At oral argument on the cross-motions for summary judgment[12] Aetna's attorney argued that it has "not a right but an obligation to insure independent contractors or what they would consider independent contractors/employees of Trans American" who cannot obtain their own workers' compensation insurance due to their status as sole proprietors (i.e. truck owner and operator). Aetna contended that the hired vehicle rule mandates that such insurance be provided to independent owner-operators or truck drivers and claimed the "right" to charge the additional premium for these outside truckers because of the "possibility" that it will be labelled the insurer of these individuals in court, notwithstanding the disclaimers in Trans American's Independent Contractors Agreement.
The motion judge described the dispute in the following exchange with Aetna's attorney:
The Court: You want to take up  money up front for however many people you say are independent contractors, charge them a premium for it, which you may never have to pay one dollar of and for which these people may never be determined to be employees. Isn't that what you want to do?
Mr. Floria [attorney for Aetna]: That's correct.
In denying Aetna's motion and dismissing its complaint, the judge found that the certification submitted in support of Aetna's motion was based on supposition. The judge ruled that Aetna was not entitled to make such charges because independent contractors do not fall within the ambit of the hired vehicle rule. He opined that unless or until an independent contractor is held to be Trans American's employee in the context of a *326 workers' compensation claim, Aetna may not charge a premium for that individual. The judge granted Trans American's cross-motion for reimbursement.
Although the remedial policy behind the Workers' Compensation Act encourages courts to apply that act liberally in order "to bring as many cases as possible within its coverage," Wilson v. Kelleher Motor Freight Lines, Inc., 12 N.J. 261, 265, 96 A.2d 531 (1953); Petrone v. Kennedy, 75 N.J. Super. 295, 303, 183 A.2d 124 (App.Div.), certif. denied, 38 N.J. 312, 184 A.2d 423 (1962), nevertheless, an essential precondition to the act's applicability is a finding of an employer-employee relationship. See Grant v. Blazer Coordinating Council of Youth Dev., 111 N.J. Super. 125, 128, 267 A.2d 568 (Law Div. 1970), mod. on other grounds, 116 N.J. Super. 460, 282 A.2d 769 (App.Div. 1971); 38 New Jersey Practice, Workers' Compensation Law § 161, at 56 (Jon L. Gelman) (1988). Independent contractors, i.e., those "who, [while] carrying on an independent business, contract to do a piece of work according to [their] own methods and without being subject to the control of [their] employer as to the means by which the result is to be accomplished but only as to the result of the work," are not within the act's coverage. See Wilson v. Kelleher Motor Freight Lines, Inc., supra, 12 N.J. at 264-266, 96 A.2d 531 (owner-operator of truck held to be independent contractor). We acknowledge that a determination of status as an employee or an independent contractor is generally fact sensitive. In order to determine whether an independent contractor relationship is involved courts generally look to the purported employer's "right to control" the work and the "nature of the work" performed. Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 350, 382 A.2d 939 (App.Div. 1978). See 38 New Jersey Practice, Workers' Compensation Law §§ 162-163, at 57-58; Restatement (Second) of Agency § 220 (1957).
Under the "right to control" test, the exercise of control is not as determinative as the right to control. Smith v. *327 E.T.L. Enterprises, supra, 155 N.J. Super. at 350, 382 A.2d 939. The primary factors considered significant when analyzing the right to control include: evidence of the right of control, right of termination, furnishing of equipment, and method of payment. Tofani v. Lo Biondo Bros. Motor Express, Inc., 83 N.J. Super. 480, 486, 200 A.2d 493 (App.Div.), aff'd o.b., 43 N.J. 494, 205 A.2d 736 (1964). The "relative nature of the work" test focuses on whether there is "substantial economic dependence" upon the "employer" by the "employee" and whether there has been a "functional integration of their respective operations." Smith v. E.T.L. Enterprises, supra, 155 N.J. Super. at 352, 382 A.2d 939. In other words, the "relative nature of the work" is tested by "whether the work is an integral part of the employer's business and whether the worker furnishes independent business or professional service." Tofani v. Lo Biondo Bros., supra, 83 N.J. Super. at 490, 200 A.2d 493.
Whether a worker furnishes an independent business is determined by judging how independent, separate and public his business is and not by merely looking at the artisan or job alone. Such employments cover services generally. When all items such as simultaneous carrying on of other contracts, absence of necessity for the contractor to personally do any physical work, and advertising and holding himself out to the public as furnishing this business service, point toward independent contractorship, they can be offset by showing the employer has taken over this otherwise independent contractor and so to speak, by making him one of the cogs in his production machine, converted him to the status of employee for purposes of that particular employment. Id. at 490-491, 200 A.2d 493.
Here, however, the issue of independent status was conceded by Aetna in discovery. It was not disputed in the hearing before the trial judge and it is reasonable to conclude that it was considered undisputed. Moreover, although now denying any such concession, Aetna's brief states: "It is true that Aetna did not question the legal status of the outside truckers at the trial level." Thus, the record before us is not equivocal. See Wilson v. Kelleher Motor Freight Lines, Inc., supra.
Nevertheless, Aetna argues that since the motion judge failed to apply either of these tests a remand is required, relying on Smith v. E.T.L. Enterprises, supra, 155 N.J. Super. *328 at 347, 382 A.2d 939. In Smith we reversed an order dismissing a claim petition and remanded for a fact hearing due to a mere conclusory "finding" by the Workers' Compensation Judge that the petitioner was an independent contractor, and thus not an employee. Since no trucker has claimed to have been an employee, there is no specific claimant against whom either test can be applied. Moreover, the injured claimant in Smith was a trucker who did not own a tractor, but leased it from the very company which hired him. Id. at 351, 382 A.2d 939. On the other hand, independent contractor truckers hired by Trans American own their own vehicles. Thus, the dispute here differs from the type involved in Smith, where an injured party seeks coverage and bears the burden of proving the existence of an employer-employee relationship. Aetna is essentially demanding premiums for a number of individuals in advance of any potential claim by any trucker/independent contractor merely on its assertion (in part based on the Workers' Compensation Manual) of a possibility that one of that class might someday (before the statute of limitations runs) seek employee status to claim the benefits of workers' compensation insurance coverage.
As noted, Aetna relies heavily on the hired vehicle rule in § 3:3-46 of the Workers' Compensation Manual (quoted supra, at page 320, 618 A.2d at 908) which provides a formula for setting premiums where "the owner of [a hired vehicle] has not insured [or self-insured] its compensation obligations and furnished evidence of such insurance." For purposes of receiving additional premium payments, Aetna wants to presume all such outside truckers are employees entitled to coverage unless Trans American can prove otherwise, notwithstanding the usual rules with respect to independent contractor status. Aetna cites no case law, statute or regulation for its position and we have found none. Likewise, we have found no authority which elevates the manual above the legal definition of independent contractor. The contents of the manual have not been adopted as regulations under the Administrative Procedure Act, *329 N.J.S.A. 52:14B-1 et seq., and do not have the force or effect of law.
Although not involving workers' compensation, Public Serv. Mut. Ins. Co. v. White, 4 N.J. Super. 523, 68 A.2d 278 (App.Div. 1949), which arose in an analogous context, is instructive. Public Service Mutual sought payment of additional premiums on the liability insurance policy it provided defendant's trucking company, White's Express. Id. at 525, 68 A.2d 278. On occasions when his own facilities were insufficient to meet the needs of his customers, White chose either to hire additional trucks or transfer cargo to independent interstate carriers. The policy provided for an initial premium that could be adjusted upward for the use of "hired automobiles and trailers," and an audit of the insured's records in order to determine the final premium for the year. During an audit, the insurer examined records of both hired vehicles and cargo transferred to independent transporters. Id. at 526, 68 A.2d 278. The insurer charged an additional $426.69 in premiums, subject to a credit on additional premiums paid if the insured produced evidence that the independent carrier held public liability and property damage insurance policies. The trial court reasoned that the additional premiums were due based on custom and usage so that "hired automobiles and trailers" could be understood to include independent carriers. Ibid. We reversed on the ground that the testimony was insufficient to establish the alleged custom and usage in the trade. Id. at 527, 68 A.2d 278. Moreover, we said:
The term "hired automobiles" in its primary sense refers to vehicles rented, possessed and controlled by the insured.... The transfers of cargo and their carriage by other independent carriers would thus ordinarily be excluded since in those instances the vehicles were possessed and controlled by others who would be responsible for their operation. [Ibid. (citation omitted.)]
In Aetna's policy, the hired vehicle rule is not specifically mentioned and no party relies on usage and trade of the industry. The fairness of charging the additional (although small) premium in Public Service Mutual was not an issue. Moreover, the definition of "hired automobile" in Public Service *330 Mutual implies that, much like the question of independent contractor status, the degree of control possessed by a trucking company is vital to determining "hired automobile" status. Here, nothing brings into question the viability of Trans American's independent contractor agreements. Aetna's arguments hinge on speculation and supposition, and as such do not raise a genuine issue of material fact.
We conclude that Aetna may not apply the manual's hired vehicle rule to charge Trans American premiums for independent contractors, thereby placing the burden of disproving "employee" status (to avoid additional premiums) on Trans American. Not only did Aetna concede in discovery that the truckers were independent contractors, but a plain reading of the hired vehicle rule leads to that result. The manual's hired vehicle rule cannot change the burden of proof and allow an insurer to assume that outside truckers retained under an independent contractor agreement are an insured's "employees" after it has received evidence of their independent contractor status because of a mere possibility of some future claim of employee status. This is so even if the outside truckers maintained no workers' compensation insurance coverage of their own, usually because of sole proprietor status. Where an insurer seeks to impose charges despite contracts which show independent contractor status, the burden shifts to it to disprove that status. Moreover, if a trucker does establish employee status in a workers' compensation forum the insurer is not without remedy. Aetna's attorney conceded at argument on the motions that the insurance company has "a right to charge premiums back" if an injured claimant is successful in establishing employee status.
Fundamental fairness also warrants this result. Aside from the apparent fact that no claim has been made under the policies for the years involved, we would assume that any such claim that might be raised would be met by Aetna or any other insurer with the defense of independent contractor status. If *331 an injured outside trucker for Trans American filed a petition for coverage, we would expect that Aetna would most likely deny that claimant was an employee and wait until that individual proves an employer-employee relationship before any payments would be made. See Povoa v. Manuel Vieira Constr. Co., 2 N.J. Super. 48, 51, 64 A.2d 463 (App.Div. 1949); Russell v. Torch Club, 26 N.J. Super. 75, 77, 97 A.2d 196 (Law Div. 1953). See, e.g., Wilson v. Kelleher Freight Lines, Inc., supra, 12 N.J. at 261, 264-266, 96 A.2d 531, which involved an unsuccessful claim to recover workers' compensation by an owner-operator of a truck; the Supreme Court affirmed the conclusion of the Appellate Division, which reversed the Workers' Compensation Bureau, that the owner-operator was an independent contractor who was not subject to Title 34.
The absence of any indication that a claim for coverage has been made by any independent contractor for either the 1985-1986 or 1986-1987 policy period indicates that the possibility of such a claim is remote. This is especially so in light of a two year limitation period for filing a workers' compensation claim petition. See N.J.S.A. 34:15-41, 34:15-51; Barrone v. Harra, 77 N.J. 276, 390 A.2d 571 (1978).
We recognize, of course, that any insurance policy is entered into with the knowledge that the insured may pay premiums for years before the insurer is required to pay a claim, if ever. What Trans American dubs a "windfall" is precisely why Aetna is in business; any insurance company which paid every claim without contesting coverage where appropriate might not remain in business.
Although not relied upon by the judge in ruling on the motions, we observe that a definitional section of the Workers' Compensation Manual precedes the hired vehicle rule. The hired vehicle rule speaks of "vehicles, including drivers, chauffeurs and helpers." The manual contains the following definitions:

(d) Drivers and their Helpers defined as those employees whose principal duties are performed upon or in connection with horsedrawn vehicles in either capacity, and shall also include incidental stable hands.

*332 (e) Chauffeurs and their Helpers defined as those employees whose principal duties are performed upon or in connection with motor vehicles in either capacity, and shall also include incidental garage employees or employees using bicycles in the service of the employer. [§ 3:3-26(d) and (e).]
From these definitions, Trans American argues that its independent contractors are not within the purview of the rule. We agree.
Even if independent contractor truckers were within the ambit of the hired vehicle rule, the rule by its own terms is triggered only when "the owner of such vehicles has not insured its compensation obligations and furnished evidence of such insurance." As Trans American points out, the independent contractors here are "primarily unincorporated sole proprietors, i.e., the typical one-man driver who owns his own rig, and are neither employers nor employees subject to the Workers' Compensation Act." See N.J.S.A. 34:15-36. Since such outside independent contractor truckers here have no workers' compensation obligation to insure, the hired vehicle rule cannot be applied here.
Affirmed.
NOTES
[1] From March 1984 to March 1987, Trans American obtained its workers' compensation insurance coverage from Aetna. The premiums in dispute are for the 1985-1986 and 1986-1987 policy periods. The majority of the amount sought by Aetna stems from the 1986-1987 policy period and interest.
[2] In its brief Aetna now asserts, after it received an adverse ruling on both its motion and the cross-motion, that the denial of its summary judgment motion was justified in light of the record before the motion judge.
[3] The Workers' Compensation Manual, adopted July 1, 1959, and amended to date, provides in part one, section three, in a preamble that the Bureau (described infra note four) is established in accordance with the provisions of N.J.S.A. 34:15-88, with such objectives, jurisdiction and organization under the supervision of the Commissioner of Insurance as provided by statute.

Part three of the Workers' Compensation Manual, which contains the hired vehicle rule, deals with application of the manual, definitions and various rating information. Part four of the Workers' Compensation Manual establishes classifications and assigns code numbers with the rates and rating values to be used in § 2:1-2 of the Workers' Compensation Manual.
Although the Workers' Compensation Manual has been filed with and approved by the Commissioner of Insurance, apparently it does not appear in the New Jersey Administrative Code. The manual's exact status and significance is unclear and this was noted by the motion judge.
[4] This Bureau was established in 1917 as a "membership organization composed of all the companies writing compensation insurance in the State and presided over by a Special Deputy Commissioner of Banking and Insurance." Magna Mfg. Co. v. Aetna Casualty & Sur. Co., 129 N.J. Eq. 142, 144, 18 A.2d 565 (Ch. 1941). See N.J.S.A. 34:15-89; Harper v. New Jersey Mfrs. Casualty Ins. Co., 1 N.J. 93, 97, 62 A.2d 135 (1948). Although under the supervision of the Commissioner of Insurance and presided over by a Special Deputy Commissioner appointed by the Commissioner as ex officio chairman of the Bureau, N.J.S.A. 34:15-90, it appears more an arm of the insurance industry or a cooperative agency than a governmental agency. The member insurance companies choose the officers, members of committees and employees of the Bureau, subject to the Commissioner's approval. Id.
[5] This sentence obviously refers back to the first sentence and logically includes the qualification "[who] has not insured its compensation obligation." There is no obligation for such coverage for a sole proprietor as was conceded by Aetna's attorney before the motion judge. Indeed such coverage is not obtainable. See N.J.S.A. 34:15-1, 34:15-36 and 34:15-71. This makes some sense logically because a sole proprietor is neither an employer nor an employee, but works for his or her own benefit, and is free to obtain whatever life insurance or disability insurance, or both, as that person may choose. Assembly Bill 276 of 1992 was introduced to amend N.J.S.A. 34:15-36 to allow certain sole proprietors to obtain workers' compensation coverage.
[6] Aetna takes the position on appeal, somewhat contrary to its position in discovery, that these truckers were not independent contractors in the legal sense under the Workers' Compensation law.
[7] Aetna's brief states that failure to charge an additional premium for independent contractors in the 1984-1985 policy period is of no significance to the increased premiums sought for the 1985-1986 and 1986-1987 policy periods. It asserts that Trans American probably should have been charged an additional premium "but received a break for reasons which do not appear of record."
[8] Trans American counterclaimed and won summary judgment for this amount in the Law Division.
[9] According to the affidavit of Aetna's Premium Audit Manager in support of its motion for summary judgment, Aetna "used the prior year's data to approximate the insurance exposure for independent contractors as being one-third (1/3) of the total amount paid for the hire of such vehicles under contract." Applying this formula, Aetna arrived at a figure of $47,714, to which was added $1,454.86 for a few other non-auditable policies, plus 8% interest through June 1989 amounting to $9,119.83, for a total of $58,288.69. For reasons unclear from the record, Aetna's complaint sought $58,394.89. By June 1991, interest increased the claim to $66,228.20.
[10] The record on appeal does not contain such attachments.
[11] The sponsor's statement to A-276 (1992), prefiled January 14, 1992, reflects the fact that sole proprietors and partners are not covered by the Workers' Compensation Act. The bill has not moved from Committee since introduced.
[12] Aetna moved for summary judgment on the alleged outstanding balance on the 1986-1987 policy period traceable to coverage for outside truckers. Trans American's cross-motion for summary judgment sought the reimbursement of $38,938.48 paid for the 1985-1986 policy period on coverage for outside truckers.