This is an appeal by the defendant from a judgment for plaintiff entered in the Essex County District Court in the sum of $426.69 for additional earned premium payable on a liability insurance policy.
The defendant is engaged in the interstate trucking business, and owns several trucks which he uses in connection therewith. On occasion, when his own facilities are insufficient, he either (1) hires additional trucks, or (2) transfers cargo to other independent interstate carriers. In the former event, the operation of the hired vehicles is entirely the defendant's; he receives and retains the freight charges and pays incidental expenses. In the latter event, the operation of the vehicles is entirely by the other independent carriers; they receive and retain the freight charges from the defendant and pay incidental expenses.
In November, 1946, the plaintiff insurance company issued a policy to the defendant which insured him against liability for bodily injury and property damage resulting from his ownership or operation of the insured vehicles. An advance premium for the insured vehicles owned by the defendant was duly paid. An endorsement attached to the policy provided, in effect, for the payment by the defendant of an additional earned premium for "hired automobiles and trailers" used by the defendant. This additional earned premium was to be based on the application of rates prescribed by the company's Automobile Casualty Manual "to the amount incurred by the named insured for the hire of such automobiles and trailers." The policy provided that the insured would maintain records as to hired vehicles and that the insurance company would be permitted to examine and audit the insured's records.
After the issuance of the policy, an accountant representing the plaintiff visited the defendant's premises and inquired of the clerk in attendance as to where he could find the hired vehicles account. He was shown a disbursement book from which he took the total appearing under the designation "Hired Trucks" and, on the basis thereof, calculated that the *Page 526 
additional earned premium payable by the defendant was $426.69. However, the testimony on behalf of defendant indicated that the figures taken by the plaintiff's representative related not only to trucks which had been rented and operated by the defendant, but also to transfers of cargo to other independent interstate transporters. An officer of the plaintiff testified that the insurance company considered that the policy reference to hired automobiles covered transfers of cargo to other carriers as well as vehicles rented for operation by the insured. He further testified that although he knew of no policy provision bearing on the subject, the practice was to give the insured a credit on the additional premium payable upon the company's receipt of certificates of insurance evidencing that the independent carriers to whom the cargo had been transferred held public liability and property damage insurance policies. No evidence was introduced to indicate that the plaintiff had notified the defendant of this practice or that he was otherwise aware of it. The District Court determined that hired automobiles and trailers included transfers to other independent carriers, and rendered judgment in the plaintiff's favor.
The term "hired automobiles" in its primary sense refers to vehicles rented, possessed and controlled by the insured. SeeGiroud v. New Jersey Manufacturers' Casualty Insurance Co.,106 N.J.L. 238, 241 (E. A. 1930). The transfers of cargo and their carriage by other independent carriers would thus ordinarily be excluded since in those instances the vehicles were possessed and controlled by others who would be responsible for their operation. The plaintiff contends, however, that evidence of custom and usage was properly admitted and gave the term a broader meaning to include the transfers as well as the rentals. We agree that evidence of an established custom or usage in the trade is generally admissible as an aid in the interpretation of the meaning of language used in an insurance policy or other contract. See Williston, Contracts (Rev. Ed. 1936), § 648 etseq. Cf. Zurich General Accident and Liability Insurance Co.,Ltd., v. American Mutual Liability Insurance Co., *Page 527 118 N.J.L. 317 (Sup. Ct. 1937). But the alleged custom or usage must be clearly established and must be known to the parties or so notorious in the trade as to charge them with notice thereof. See Cramer King Co. v. National Surety Company of New York,103 N.J.L. 83, 85 (E. A. 1926). Cf. Restatement,Contracts, § 247 (1932). Our examination of the record has led us to the conclusion that the testimony introduced in the lower court was wholly insufficient to establish the alleged custom or usage and the judgment below, having been rested on its existence, must be reversed.
Since further proceedings will be required, we wish to point out that we find no merit in the defendant's contention that the lower court erred in its view that the figures furnished by the defendant's clerk were admissible in evidence and excused the plaintiff from any obligation it may then have had to make a further audit. It is not disputed that the figures were accurately taken from the defendant's books and under the circumstances the plaintiff reasonably concluded that there was no occasion for any detailed audit. They constituted an admission by the defendant which was available to the plaintiff as legal proof at the trial (Newhouse v. Phillips, 110 N.J.L. 421, 423
(E. A. 1933)), and although they were not conclusive, they were sufficient on the plaintiff's case to support its claim and the burden of going forward with proof as to what portion of the claim actually represented transfers, for which liability was denied, was on the defendant.
The judgment below is reversed and a new trial ordered. *Page 528