**NORTH RIVER INSURANCE COMPANY, Plaintiff,**

v.

**EMPLOYERS REINSURANCE CORPORATION, Defendant.**

No. C–2–00–1221.

United States District Court, S.D. Ohio, Eastern Division.

March 11, 2002.

Alvin James McKenna, Porter, Wright, Morris & Arthur, Columbus, OH, for Plaintiff.

James Michael Wiles, Wiles, Boyle, Burkholder & Bringardner, Columbus, OH, Robert S. Soderstrom, Tressler, Soderstrom, Maloney, & Priess, Chicago, IL, for Defendant.

## ORDER

GRAHAM, District Judge.

This is a diversity action for breach of contract filed by plaintiff North River Insurance Company against defendant Employers Reinsurance Corporation. Plaintiff alleges that it issued liability insurance policies to Owens–Corning Fiberglas Corporation ("Owens–Corning"), a company formerly engaged in the manufacture of insulation containing asbestos. Plaintiff then entered into a reinsurance agreement with the defendant under which defendant agreed to indemnify plaintiff for a percentage of plaintiff's liability in the event that plaintiff became obligated to satisfy claims submitted by Owens Corning under those policies. This facultative reinsurance certificate related solely to the liability policies issued by plaintiff to Owens–Corning, and the certificate was effective from June 18, 1974, to October 22, 1976.

Pursuant to this reinsurance certificate, defendant paid certain amounts to plaintiff following payments by plaintiff to Owens–Corning under its liability policies stemming from asbestos product liability claims against Owens–Corning. However, in 1998, Owens–Corning incurred additional liability for the payment of claims stemming from the installation of its asbestos products (the so-called non-product asbestos claims) and submitted these new claims to plaintiff under the liability policies. Plaintiff initially contested any obligation to satisfy these additional liability claims by filing an action in which plaintiff asserted various defenses to liability, but on May 17, 2000, plaintiff agreed to settle the claim submitted by Owens–Corning. Plaintiff then submitted a claim to defendant under the reinsurance certificate, which defendant refused to pay. Plaintiff now alleges that defendant is liable for breach of contract in the amount of $15,331,526.

On January 4, 2001, defendant filed an answer in which defendant asserted various defenses, including a denial that any additional amounts were owed under the reinsurance certificate and the assertion that plaintiff waived any entitlement to benefits by breaching its duty of good faith and fair dealing to defendant.

Defendant also filed a counterclaim for a declaratory judgment pursuant to 28 U.S.C. § 2201. Defendant requests a determination: (1) that there was no "occurrence" during the certificate period because installation of asbestos products ceased in 1973; (2) that plaintiff must prove that the non-product asbestos claims were covered under plaintiff's liability policies; (3) that plaintiff breached its duty of good faith to defendant by failing to fully investigate Owens Corning's claims, to assert available defenses to coverage, and to first exhaust underlying layers of insurance coverage; (4) that plaintiff failed to promptly notify defendant of the pendency of Owens–Corning's claims; (5) that defendant is not liable for defense costs in addition to the policy limits of the reinsurance

certificate; (6) that plaintiff improperly allocated settlement among its various policies; (7) that defendant's maximum liability to plaintiff is five million dollars; and (8) that defendant is entitled to rescind the reinsurance agreement.

On January 29, 2001, plaintiff filed an answer to defendant's counterclaim, asserting various defenses, and filed a counterclaim for breach of contract, asserting that defendant is liable to reimburse plaintiff for the payment of defense costs in addition to the certificate limits in amount of $6,349,327.

The parties have filed cross motions for partial summary judgment on the issue of whether the "follow the settlements" doctrine should be read into the reinsurance certificate at issue here. Docket Nos. 21, 24. The procedure for granting summary judgment is found in Fed.R.Civ.P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex* and *Matsushita* effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479. In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely " 'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348).

■ The "follow the settlements" doctrine imposes on the reinsurer a contractual obligation to indemnify the reinsured or ceding company for payments the reinsured makes pursuant to a loss settlement under its own policy, provided that such settlement is not fraudulent, collusive or otherwise made in bad faith, or an *ex gratia* payment, such as one made to avoid the costs of litigation even though there is no legal obligation to pay. *Aetna Cas. and*

*Sur. Co. v. Home Ins. Co.*, 882 F.Supp. 1328, 1346 (S.D.N.Y.1995).

■■■■ The purpose of this doctrine is to prevent the reinsurer from second-guessing the settlement decisions of the reinsured, thereby promoting good faith settlements by the reinsured. *Id.* Where this doctrine applies, the insurer cannot avoid liability by raising policy defenses and objections that were available to the reinsured unless the reinsured pays a settlement that is clearly or manifestly outside the scope of the reinsured's policy coverage or pays a settlement that is fraudulent, collusive or in bad faith. *Id.* at 1347.[1] *See also Mentor Insurance Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 517 (2d Cir.1993)(principle does not change reinsurance contract, but requires payment where insured's good faith payment is at least arguably within scope of insurance coverage that was reinsured); *Christiania General Ins. Corp. v. Great Am. Ins. Co.*, 979 F.2d 268, 280 (2d Cir.1992)(although reinsurer is not obligated to indemnify for payments clearly beyond scope of original policy, reinsurers must reimburse reinsured for payment of settled claims so long as payments were made in good faith and were reasonably within terms of original policy, even if not technically covered by it, and may not second guess good faith liability determinations made by insured or insured's good faith decision to waive defenses); *Unigard Security Ins. Co. v. North River Ins. Co.*, 762 F.Supp. 566, 581 (S.D.N.Y.1991)(under doctrine, reinsurer is required to indemnify for payments reasonably within the terms of the original policy, even if not technically covered by it).

Plaintiff points to language in the reinsurance certificate which plaintiff contends is sufficient to impose a "follow the settlements" obligation. Plaintiff further argues that, even in the absence of a specific provision, the concept of "follow the settlements" is implicit in every reinsurance contract as a matter of law by reason of custom or practice in the reinsurance industry. Plaintiff further argues that the intent to include the concept of "follow the settlements" in the agreement may be implied by evidence of custom or practice in the reinsurance industry. Defendant contends that the certificate contains no language which can reasonably be construed as a "follow the settlements" clause, and that, in the absence of an explicit clause to that effect, the certificate is not governed by this principle.

Both parties have submitted evidence, including expert affidavits, on the issue of whether it was the custom or practice in the reinsurance industry at the time the reinsurance certificate in this case was issued for the parties to assume that a "follow the settlements" obligation was inherent in the certificate even in the absence of a specific provision to that effect.

■■■■ The existence of a custom or usage to "follow the settlements" is in the first instance a question of fact. *National American Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 537 (9th Cir.1996); *Mentor Insurance Co.*, 996 F.2d at 513. If a custom or practice is

---

**1.** Some cases refer to the concept of "follow the settlements" as the "follow the fortunes" doctrine. Although these terms are frequently used interchangeably in opinions, the term "follow the fortunes" more accurately describes the reinsurer's obligation to follow the reinsured's underwriting fortunes, whereas "follow the settlements" refers to the duty to follow the actions of the reinsured in adjusting and settling claims. *Aetna Cas. & Sur. Co.*, 882 F.Supp. at 1346 n. 9. *See also Bellefonte Reinsurance Co. v. Aetna Cas. and Sur. Co.*, 903 F.2d 910, 912 (2d Cir.1990)("follow the fortunes" doctrine burdens the reinsurer with risks which direct insurer bears under direct insurer's policy covering original insured).

shown to exist, then the custom or usage may become a part of the certificate if state law permits it. *National American Ins. Co.*, 93 F.3d at 537.

## I. Choice of Law

▆▆▆ The first matter disputed by the parties is which state's law should be applied to their contract dispute on this issue. There is no choice of law provision in the reinsurance certificate. In a diversity action, a district court must apply the choice of law rules of the state in which it sits. *National Union Fire Ins. Co. v. Watts*, 963 F.2d 148, 150 (6th Cir.1992). Ohio choice of law rules mandate that the law of the state with the more significant relationship to the contract should govern disputes arising from it. *Nationwide Mut. Ins. Co. v. Ferrin*, 21 Ohio St.3d 43, 487 N.E.2d 568 (1986); *Gries Sports Enterprises, Inc. v. Modell*, 15 Ohio St.3d 284, 473 N.E.2d 807 (1984).

Ohio has adopted the test set forth in the Restatement (Second) of Conflict of Laws § 188, which includes consideration of: (a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Watts*, 963 F.2d at 150. Other considerations in the absence of an express statutory provision regarding choice of law may include: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability, and uniformity of result; and (g) ease in the determination and application of the law to be applied. Restatement (Second)

of Conflict of Laws § 6; *Watts*, 963 F.2d at 151.

Plaintiff alleges in the complaint that it is a New Jersey corporation with its principal place of business in Morristown, New Jersey, and that defendant is a Missouri Corporation with its principal place of business in Overland Park, Kansas. Plaintiff contends that the contract was to be performed in New Hampshire, New York, New Jersey and Kansas. Plaintiff argues that the law of New York should apply, because the parties negotiated the terms of the reinsurance certificate in New York, and the certificate became binding upon defendant's countersignature in New York. In the alternative, plaintiff argues that Ohio law should apply because Owens–Corning, the holder of the underlying liability policy, is located in Ohio.

Defendant argues that New Jersey has the most significant relationship to the contract. Defendant asserts that the bulk of plaintiff's assets are located in New Jersey. Defendant contends that the contract was completed with the delivery of the certificate to plaintiff's office in New Jersey. Defendant cites *British Ins. Co. of Cayman v. Safety National Cas. Corp.*, 146 F.Supp.2d 585, 589–90 (D.N.J.2001), where the court held that New Jersey had the most significant connection with the reinsurance contract where the reinsured's principal place of business was located in New Jersey, and where the defendant was licensed to do business in New Jersey. *See also Babcock & Wilcox Co. v. Arkwright–Boston Mfg. Mut. Ins. Co.*, 867 F.Supp. 573, 576 (N.D.Ohio 1992)(applying law of state where liability insured's assets were located, since insured risk was depletion of assets).

▆▆▆ This court agrees with defendant's argument that Ohio would have little or no interest in the contract by virtue of the fact that Owens–Corning, the under-

lying insured, is located in Ohio. In support of this argument, defendant has cited *Travelers Cas. and Sur. Co. v. Philadelphia Reinsurance Corp.*, 2001 WL 631328 (N.D.Ohio 2001), *reprinted in* Mealey's Litigation Reporter: Reinsurance, Vol. 12, No. 3, June 7, 2001, included in defendant's reply, Exhibit C, in which the court held that the location of the underlying insured was immaterial to the determination of a reinsurance dispute involving underlying Owens–Corning asbestos losses. That case is in accord with Ohio law, which holds that individuals who are not parties to the reinsurance contract have no right of action against the reinsurer. *See Stickel v. Excess Ins. Co. of America*, 136 Ohio St. 49, 55, 23 N.E.2d 839 (1939). Here, the reinsurance contract was negotiated between plaintiff and defendant, and Owens–Corning is not a party to that contract. The presence of Owens–Corning in Ohio is not sufficient to give Ohio an interest in this dispute.

■■■ Applying the factors in § 188 of the Restatement, this court concludes that New Jersey has the most significant relationship with the reinsurance contract. Plaintiff is a party to the reinsurance contract. The certificate was issued to plaintiff, a New Jersey corporation with its principal place of business located in New Jersey. The reinsurance contract is one of indemnity, designed to protect plaintiff's assets in the event that they are depleted by claims made on the underlying policy. It is likely that payment of any claim made under the terms of the reinsurance certificate would be sent to plaintiff's principal place of business in New Jersey.

The court further determines that none of the factors set forth in § 6 of the Restatement are of significant weight here. New Jersey has the strongest interest in furthering any state policies designed to

protect insureds domiciled within its borders. New York and Ohio have no comparable interest in the subject matter of the contract. Since each contract dispute depends on the individual contract, certainty, predictability, and uniformity of result is not of strong concern.[2] For a court sitting in Ohio, New Jersey law is no more difficult to determine than New York law. If the parties had justified expectations which they wished to protect, they could have included a choice of law provision in the contract, but they did not do so. The court will apply New Jersey law.

## II. Motions to Strike Expert Affidavits

Plaintiff has moved to strike certain paragraphs from the affidavit of defendant's expert, William C. Hoffman, Exhibit F to defendant's cross-motion for summary judgment, arguing that these paragraphs constitute impermissible legal opinions on matters of reinsurance law. Mr. Hoffman is an attorney who has been employed in the reinsurance industry since 1990, and is currently employed as a casualty underwriter with the Swiss Reinsurance Company. Defendant has moved to strike certain paragraphs from the affidavit of plaintiff's expert, William J. Gilmartin, Exhibit G to plaintiff's reply memorandum in support of its motion for summary judgment, on that same ground. Mr. Gilmartin is a consultant who retired from the insurance industry in 1986 after more than thirty-five years of working in the industry.

■■■ Pursuant to Fed.R.Evid. 702, expert testimony is admissible if the evidence will assist the trier of fact and if the witness is qualified as an expert. *Glaser v. Thompson Medical Co., Inc.*, 32 F.3d 969, 971 (6th Cir.1994). Under Fed. R.Evid. 704(a), the expert's opinion may

---

**2.** In any event, this court's research has disclosed that the rules of contract interpretation under New York and New Jersey law are substantially similar.

"embrace[ ] an ultimate issue to be decided by the trier of fact[,]" but the issue embraced must be a factual one. *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir.1994). Expert opinions which express a legal conclusion are not admissible. *Id.* at 1354. *See also Woods v. Lecureux,* 110 F.3d 1215, 1220 (6th Cir.1997)(expert testimony offering nothing more than a legal conclusion, that is, testimony that does little more than tell the jury what result to reach, is properly excluded under the rule); *Torres v. County of Oakland,* 758 F.2d 147, 150 (6th Cir.1985)(testimony containing a legal conclusion is inadmissible because it is not helpful to the jury and conveys legal standards to the jury, thereby invading the province of the court to determine applicable law and to instruct the jury as to that law).

 Plaintiff first argues that paragraph 8 of Hoffman's affidavit expresses a legal opinion on the validity of two prior decisions, *International Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London,* 868 F.Supp. 917 (S.D.Ohio 1994) and *Aetna Cas. and Sur. Co. v. Home Ins. Co.,* 882 F.Supp. 1328 (S.D.N.Y.1995), in that he expresses the opinion that the courts in those cases relied on evidence of reinsurance practices which was factually inadequate to prove an implied term in a reinsurance contract and accepted arguments based on erroneous interpretations of standard reinsurance practices. If Mr. Hoffman had stated that, based on his experience in the reinsurance industry, he disagreed with the factual accuracy of the evidence, or that this evidence did not adequately reflect the true custom and practice in the industry, such an opinion would be admissible. Instead, Mr. Hoffman expresses an opinion on the ultimate legal issue before those courts, that is, whether the evidence was sufficient to imply a term in the contracts. As such, it is of no assistance in determining the facts in this case, and the motion to strike paragraph 8 is granted.

 Plaintiff also attacks the statement in paragraph nine that an implied "follow the settlements" clause must be shown by clearly convincing evidence describes a legal standard. Plaintiff is correct that it is a matter of law for this court to determine what standard of proof applies to showing an implied contractual term here, and that statement will be stricken.

 Plaintiff next argues that Hoffman expresses impermissible legal conclusions concerning the "follow the fortunes" or "follow the settlements" principles which are rooted in legal research, not experience in the industry. In paragraph 5(a), Hoffman states that under "standard reinsurance practices prevailing for several centuries and pursuant to settled principles of indemnity law, a reinsurer's duty to indemnify does not arise unless the reinsured shows that it was actually liable for reinsured loss." The fact that Hoffman also bases his opinion on indemnity law does not require ignoring his opinion concerning "standard reinsurance practices" and the motion to strike the paragraph as a whole is denied. This affidavit is being submitted in support of a motion for summary judgment. This is not a situation where the court is being asked to screen portions of the expert's opinion before he testifies before a jury. This court understands that it is the job of this court, not Mr. Hoffman, to determine the status of "settled principles of indemnity law" and the court will consider Hoffman's opinion only insofar as it constitutes a factual opinion based on his experience in the reinsurance industry, not a legal opinion.

 In paragraph 5(c), Mr. Hoffman begins a discussion of the reinsured's indemnity rights with the prefix "[a]s a mat-

ter of settled reinsurance law[.]" This is a discussion of legal principles which is beyond the scope of permissible expert testimony. Paragraph 5(d) refers to the reinsurer's right to insist on proof of actual liability for reinsured loss as being a "part of indemnity law" and "a basic part of the legal framework." This paragraph also appears to constitute a discussion of the legal principles of indemnity law. These paragraphs will be stricken.

■ Paragraph 5(f) contains statements concerning the appearance of "follow the fortunes" and "follow the settlement" clauses in reinsurance contracts. This information is of a factual nature. Hoffman goes on to describe the effect of such clauses "[u]nder settled legal principles, case law, and prevailing reinsurance practices and usage[.]" To the extent that this discussion purports to describe settled legal principles and case law, it constitutes an impermissible legal opinion. However, insofar as it is intended as a factual statement concerning prevailing reinsurance practices and usage, these statements constitute an admissible factual description of the practices and usages in the industry. The fact that Hoffman indicates that these statements are consistent with settled legal principles and case law as well as industry practices does not require the court to disregard these statements completely. Rather, the court will limit its consideration of these statements to their factual context, and will disregard any legal argument implied by these statements.

■ The statements in paragraph 5(g) about the historical development of the "follow the fortunes" and "follow the settlements" clauses and the freedom of the parties to negotiate for such clauses are permissible factual statements. The remainder of that paragraph refers to the effect of such clauses under "general principles of the law of indemnity" and appears to be a legal rather than a factual discus-

sion based on the understood use of those clauses in the industry, and as such, is improper expert testimony.

In paragraph 6, Hoffman states that based on his experience and research, the previously discussed concepts would have been a part of reinsurance law and reinsurance practice and usage in 1974 when the certificate in this case was issued. He also states that "the above points are so fundamental to reinsurance as it has been practiced in the past and continues to be practiced today that to describe them differently would presuppose a major change in the nature of reinsurance." Plaintiff argues that this paragraph is based in part on Hoffman's legal research, and should be stricken in its entirety. However, Hoffman refers to his "research," not to "legal research." While there is a reference to "reinsurance law," the majority of the paragraph refers to reinsurance practices. Thus, with motion to strike paragraph 6 is denied, with the proviso that this court will ignore the reference to "reinsurance law."

Plaintiff moves to strike paragraphs 7, 16 and 18 because Hoffman bases his opinion in these paragraphs both on his experience in the industry and on his legal research. In paragraph 7, Hoffman expresses the opinion based on his "experience in the reinsurance industry" and on his "extensive research specifically in this area of reinsurance law" that a duty to "follow the fortunes" can only be created by express agreement, not by operation of law, and that there is no reinsurance practice or usage that implies any duty to "follow the fortunes." Again, to the extent that this opinion is based on industry custom and practice, it is permissible.

■ In paragraph 7, Hoffman further offers the opinion that defendant retained its right to insist on proof of plaintiff's liability to its insured, and that, contrary to the affidavit of Wayne Keith, the certifi-

cate in this case does not require defendant to indemnify plaintiff for settlements not shown to be based on plaintiff's liability to Owens–Corning and within the scope of the reinsurance contract. This statement can be construed as a statement reflecting the impact of the custom and practice in the insurance industry on this certificate, and to that extent it is admissible. To the extent that it may be read as an opinion on the ultimate legal issue currently before the court, it is not admissible and will be disregarded.

In paragraph 16, Hoffman offers an opinion based on his experience and research that the terms of the certificate, governed the agreement between the parties, and that the scope of coverage must be determined from that certificate and not from the terms of the policy issued by plaintiff to Owens Corning. In paragraph 18, Hoffman expresses the opinion, based on his experience and research, that the clause in the certificate giving defendant the right to participate jointly with plaintiff in the investigation, adjustment or defense of claims filed in the underlying policy gave defendant the right but not the duty to investigate such claims, and that the failure to participate did not result in defendant being bound to plaintiff's settlement agreement. Again, to the extent that Hoffman's opinion is based on his experience in the industry and constitutes a statement of fact concerning industry custom and practice, it is admissible. To the extent that it purports to convey an opinion concerning reinsurance law, it is hereby stricken.

In accordance with the foregoing, plaintiff's motion to strike is granted in part and denied in part.

■ Defendant has moved to strike certain paragraphs of the affidavit of William Gilmartin. Defendant first moves to strike paragraph 25. This paragraph consists of a series of hypothetical questions illustrating why a "follow the settlements" clause should be implied and pointing out the difficulties of formulating standards for judging the reasonableness of a settlement. In paragraph 26, Gilmartin criticizes Hoffman's affidavit for failing to offer standards by which to judge the reasonableness of a settlement, and quotes from language found in *International Surplus Lines* discussing the policy reasons in favor of the "follow the fortunes" doctrine. In paragraph 29, Gilmartin quotes language from the *Aetna* opinion concerning the purpose of the "follow the settlements" doctrine. These paragraphs are not factual in nature, but rather amount to a policy argument which might be found in a legal brief on the issue. As such, they are outside the realm of expert testimony and will be stricken.

■ In paragraph 27, Gilmartin indicates that he disagrees with Hoffman on the issue of what the standard for review of a settlement should be, and whether the reinsured must prove *de novo* that the settlement was within the grant of coverage and in good faith, as Hoffman asserts, as opposed to the reinsurer having to show that the settlement was *ex gratia*, in bad faith, fraudulent or collusive. If Gilmartin were indicating a difference of opinion on what the standard view or practice actually is in the industry in regard to proof of good faith in settlements, this would be admissible. However, merely indicating that the affiant holds a different opinion on the legal issue of what should be the appropriate standard of review and burden of proof in these situations does not aid the court factually and amounts to an impermissible legal argument. This paragraph will be stricken.

■ Finally, defendant moves to strike paragraph 41 of Gilmartin's affidavit on the basis that it states a legal conclusion. This paragraph addresses the issue of

whether defendant is obligated under the certificate to pay loss adjustment expenses in addition to the reinsurance indemnity limit.[3] Gilmartin states that in his opinion, based on the language of the certificate and underwriting custom and practice prevalent in 1974, the parties to the certificate would have intended that defendant's obligation to pay its share of expenses would be in addition to defendant's indemnity limit. This paragraph does not really state a legal conclusion, although it is unartfully worded because it does not disclose how Gilmartin would have particular knowledge of the actual intent of these parties in drafting the certificate at issue here. The paragraph makes more sense when read in conjunction with paragraph 39, where Gilmartin states that it was customary at the time the defendant's certificate was issued for the reinsurer to pay loss adjustment expenses in addition to the reinsurance indemnity limit. To the extent that Gilmartin is indicating that, as a factual matter, based on the practice in the industry, the parties would have been aware that it was customary to assume that an obligation to pay expenses beyond policy limits was implicit in such an agreement, even absent explicit wording to that effect, it is a proper statement of expert opinion concerning practices in the industry. The motion to strike this paragraph will be denied.

In accordance with the foregoing, the defendant's motion to strike portions of the affidavit of William Gilmartin is granted in part and denied in part.

### III. Applicability of "Follow the Settlements" Doctrine

The parties have filed cross motions for summary judgment on the issue of whether the "follow the settlements" doctrine is applicable to the reinsurance certificate in this case.

### A. Applicability of Doctrine as a Matter of Law

Plaintiff argues that the "follow the fortunes" or "follow the settlements" doctrine is inherent in every reinsurance contract as a matter of law. Plaintiff relies on *International Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, 868 F.Supp. 917, 920 (S.D.Ohio 1994), in which the court held, despite the fact that there was no express "follow the fortunes" clause in the contract, that the "follow the fortunes" doctrine, which requires a reinsurer to indemnify for payments reasonably or arguably within the terms of the original policy, even if not technically covered by it, is "applied to all reinsurance contracts." In support of this proposition, the court cited *Mentor Insurance Co. (U.K.) Ltd. v. Norges Brannkasse*, 996 F.2d 506, 516 (2d Cir.1993), *National American v. Certain Underwriters*, slip op. 91-4021 (C.D.Cal.1991), and a treatise written by Henry T. Kramer, *The Nature of Reinsurance*, at 11–12.

Defendant argues that the cited authorities do not support the court's conclusion in *International Surplus Lines*. Defendant notes that the *Mentor Insurance* decision discussed the "follow the fortunes" doctrine but applied it to a reinsurance contract which contained an express "follow the fortunes" clause. The court in *Mentor Insurance* did not address the question of whether the doctrine was applicable in the absence of such a clause.

Defendant also correctly points out that the district court's decision in *National American* was later reversed by the Ninth Circuit Court of Appeals in *National*

---

**3.** This issue is addressed in another motion for partial summary judgment which has been filed by the defendant.

*American Insurance Co. of Cal. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529 (9th Cir.1996). In reversing the lower court, the Ninth Circuit held that whether a "follow the settlements" clause could be read into the reinsurance certificate as a matter of custom or usage in the reinsurance industry was a question of fact to be determined under the state law applicable to the contract dispute. 93 F.3d at 537. The court of appeals also concluded that the expert evidence in the record was sufficient to create a genuine issue of fact as to whether a custom or usage to "follow the settlements" existed in the industry at the time the certificate was drafted. *Id.*

Defendant also argues that the citation to the Kramer article does not support the conclusion that the "follow the settlements" doctrine is inherent in every reinsurance contract. Kramer states in his treatise:

> It is the traditional and normal position of the parties to a reinsurance, that quite apart from the principle of utmost good faith between them, a reinsurer shall also and in any case "follow the fortunes" of the insured as if the reinsurer were a party to the original insurance. This seems to speak for itself, but in practical usage problems can arise. The difficulty usually lies in determining precisely what kind of fortunes the reinsurer has agreed to follow.
>
> It is clear that this understanding (which may or may not be expressed in an agreement of reinsurance but nevertheless exists for all) does not supersede state limitations or exclusions in a reinsurance agreement. Neither is it a means by which a reinsurer can be taken right outside the contract of reinsurance on a matter about which the contract is silent or allegedly ambiguous.

Exhibit C, Defendant's Exhibits to Reply to Defendant's Cross Motion for Partial Summary Judgment. Defendant argues that the statement "but nevertheless exists for all" refers to the more narrow concept of "follow the fortunes," that is, the obligation to follow the reinsured's underwriting fortunes. *See Aetna*, 882 F.Supp. at 1346 n. 9. Defendant also notes that Kramer does not advocate that a "follow the fortunes" clause must be read into every policy, and in fact later states, "Within the concept of following fortunes, a reinsurer usually agrees as a specific contractual provision not to exercise a separate defense to policy loss as between reinsured and reinsurer." Exhibit C.

The court in *International Surplus Lines* did not have the benefit of the Ninth Circuit's decision in *National American Insurance Co.* and did not hear evidence on the prevailing custom or practice in the reinsurance industry at the time the reinsurance contract at issue was drafted. Although Ohio law was applicable in that case, there was no discussion of whether Ohio courts had addressed this question.

The Ninth Circuit's decision in *National American Insurance Co.* illustrates that a district court sitting in a diversity case must apply the relevant state law in determining whether to imply a "follow the settlements" obligation. Defendant notes that in *Michigan Township Participating Plan v. Federal Insurance Co.*, 233 Mich. App. 422, 592 N.W.2d 760 (1999), the court rejected the reasoning in *International Surplus Lines* and concluded that Michigan law did not permit reading a "follow the fortunes" clause into a reinsurance contract where no such clause was contained in the contract.

Plaintiff also relies on the decision in *Aetna Cas. and Sur. Co. v. Home Ins. Co.*, 882 F.Supp. 1328 (S.D.N.Y.1995). In that case, the court applied New York law on the "follow the fortunes" doctrine, although no case was noted which specifically held that such a clause may be read into the contract under New York law. The

court heard testimony on the subject of whether the follow the settlements doctrine was customary in the reinsurance industry. In light of the lack of any evidence to the contrary from the defendant, the court concluded that it was customary within the reinsurance industry for reinsurers to follow the claim settlement decisions of the reinsured even in the absence of an explicit loss settlements clause. *Id.* at 1349–1350.

Plaintiff has cited only three cases where the courts have held that the "follow the settlements" doctrine is inherent in every reinsurance contract, those cases being *Aetna, International Surplus Lines,* and the district court's opinion in *National American Insurance Co.* later reversed by the Ninth Circuit. Most cases which discuss the "follow the settlements" or "follow the fortunes" doctrine were faced with reinsurance certificates which contained express "follow the settlements" clauses. In fact, defendant notes that specific "follow the settlement" clauses are often included in reinsurance certificates, and that the Brokers and Reinsurance Markets Association's *Contract Wording and Reference Manual* promulgated under the direction of William Gilmartin, plaintiff's expert, includes forms for such clauses. Defendant's Reply, Ex. D. It seems logical that if the "follow the settlements" doctrine was so widely accepted as an inherent part of every reinsurance contract that the doctrine may be read into every certificate as a matter of law, there would be no need to include such clauses in reinsurance contracts.

■ Unlike the situation in *Aetna* and *International Surplus Lines,* expert testimony has been offered by the defendant in this case to refute plaintiff's argument that the "follow the settlements"

principle was implied in every contract as a matter of custom or practice in the industry. Those cases also did not require the application of New Jersey laws of contract interpretation. Whether the "follow the fortunes" doctrine may be implied in a contract by reason of custom or policy will vary depending on which state's laws apply to the contract dispute. This strongly militates against a finding that the practice of implying a "follow the settlements" clause in every reinsurance contract is so widespread and accepted in the industry as to be beyond all factual and legal dispute. The above factors indicate that there is no sound basis for applying the "follow the settlements" doctrine in this case as a matter of law.

### B. Presence or Lack of "Follow the Settlements" Clause in Contract

■ Plaintiff argues in the alternative that certain language in the certificate may be interpreted as a "follow the settlements" clause. Plaintiff first notes language in paragraph III of the certificate, which is entitled "DEFINITION OF LOSS AND CLAIM EXPENSES" and which states that "unqualified 'loss' shall mean only such amounts as are actually paid by the Reinsured in settlement of claims or in satisfaction of awards or judgments[.]" Plaintiff's Motion for Partial Summary Judgment, Exhibit B. Plaintiff argues that this language imposes a duty on the defendant to reimburse plaintiff for sums paid in settlement, and that it amounts to a "follow the settlements" clause.[4] Defendant argues that this paragraph is merely a definition of the term "unqualified loss" which confines loss to amounts actually paid by plaintiff as opposed to some other loss calculation submitted by Owens–Corning. This para-

---

4. Plaintiff has submitted the affidavit of William Gilmartin, who stated that, in his opinion, this language amounts to a "follow the settlements" clause. Plaintiff's Reply, Ex. G., ¶ 20.

graph says nothing about whether the sums paid otherwise qualify for indemnity under the policy, nor does it impose an obligation on defendant to indemnify plaintiff for amounts paid in settlement which are not within the scope of the Owens–Corning policy.

Plaintiff next relies on paragraph II of the certificate, which provides that defendant "hereby agrees to indemnify the Reinsured against loss[.]" Plaintiff argues that since unqualified loss under paragraph III includes amounts paid in settlement, defendant is bound to reimburse plaintiff for settlements without contesting whether they are covered by the Owens–Corning policy. However, defendant notes that paragraph II requires defendant to indemnify plaintiff against loss "[a]s respects loss sustained by the Reinsured under the primary policy [.]" Thus, defendant argues, the certificate specifically limits defendant's obligation to indemnify to losses covered under the Owens–Corning policy. The court agrees with the defendant that there is nothing in this provision which purports to limit or preclude defendant from contesting whether amounts paid in settlement fall within the terms of the Owens–Corning policy.

Plaintiff further notes language in paragraph V of the certificate. That paragraph provides that the defendant "shall have the right, at its own expense, to participate jointly with the Reinsured in the investigation, adjustment or defense of claims to which, in the judgment of the Corporation, it is or might become exposed." Plaintiff argues that under this paragraph, defendant waived any right to contest the settlement by failing to exercise its right to participate in the claims investigation. However, there is nothing in this language which suggests that defendant had not just a right but a duty or obligation to participate in the claims investigation, and plaintiff cites no authority which holds that a failure to exercise the right to participate in the investigation and adjustment of claims warrants application of the "follow the settlements" doctrine. As noted by defendant, the plain language of this provision merely gives defendant the right to participate in the plaintiff's claims investigation; it does not require such participation, nor does it operate as a waiver of the defendant's right to insist on proof that the loss was sustained under the primary policy as required under paragraph II.

Paragraph V further states that the "Corporation shall reimburse the Reinsured or its legal representative promptly for loss against which indemnity is herein provided, upon receipt in the home office of the Corporation of satisfactory evidence of payment of such loss." Plaintiff argues that this paragraph requires only proof of payment, not proof of actual liability for such payment. Defendant argues that this clause must be read in conjunction with the other provisions in the contract which address the type of loss subject to indemnity. These provisions include paragraph V, which provides that defendant must reimburse plaintiff "for loss against which indemnity is herein provided," and the indemnity obligation in paragraph II, which applies to "loss sustained by the Reinsured under the primary policy[.]" There is no indication in the certificate that the parties intended the "loss" referred to in paragraph V to be broader in scope than the indemnifiable loss referred to in other paragraphs of the certificate.

This court agrees with defendant that the certificate at issue does not contain language which could reasonably be construed as a "follow the settlements" clause.[5]

5. While the court has arrived at this conclusion solely by considering the contract lan-

*C. Implied "Follow the Settlements" Clause*

The remaining issue is whether it is possible to read a "follow the settlements" requirement into the reinsurance certificate in the absence of an express provision to that effect.

▪ New Jersey law states that where "the parties have made the writing the sole repository of their bargain, there is the integration which precludes evidence to antecedent understandings and negotiations to vary or contradict the writing." *Atlantic Northern Airlines, Inc. v. Schwimmer,* 12 N.J. 293, 303, 96 A.2d 652 (1953). However, whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties, which "must be judged by an external standard, including the conduct and language of the parties and the surrounding circumstances, not merely from the document itself." *Id.,* 12 N.J. at 304, 96 A.2d 652. The question of whether certain subjects of negotiation were intended to be covered depends on a comparison of the writing and the negotiations. *Id.*

▪ Under New Jersey law, the "polestar of contractual interpretation is the intent of the parties." *Communications Workers of America, Local 1087 v. Monmouth County Bd. of Social Servs.,* 96 N.J. 442, 452, 476 A.2d 777 (N.J.1984). The starting point in ascertaining that intent is the language of the contract, but "it is also permissible, to shed further light on the parties' intent, to consider and examine the circumstances that existed when the contract was made." *Id.*

▪ In determining the intent of the parties, the court may consider evidence of the situation of the parties, the attendant circumstances, and the objects they sought to attain, and even when the contract is unambiguous, evidence of the situation of the parties and the surrounding circumstances and conditions is admissible in aid of interpretation. *Great Atlantic & Pacific Tea Co., Inc. v. Checchio,* 335 N.J.Super. 495, 501, 762 A.2d 1057 (N.J.Super.Ct.App.Div.2000).

▪ Thus, in *Schnakenberg v. Gibraltar Savings and Loan Assoc.,* 37 N.J.Super. 150, 155–156, 117 A.2d 191 (N.J.Super.Ct.App.Div.1955), the court noted "whether the clause under consideration is regarded as clear and certain, or ambiguous and uncertain, if the intention of the parties is not to be gleaned from a reading of the instrument as a whole, the plaintiff should have had the opportunity of presenting evidence of the facts and circumstances surrounding the execution of the lease." *See also Ace Stone, Inc. v. Township of Wayne,* 47 N.J. 431, 439, 221 A.2d 515 (1966)(in ascertaining common intention of the parties, "formal interpretative rules are readily subordinated and parol evidence of the attendant circumstances including trade practices and customs is clearly admissible."). However, once the parties' intent is determined on the basis of the evidence available, that intent may

guage, defendant has also presented examples of "follow the settlements" clauses from the Brokers and Reinsurance Markets Association's Handbook, Defendant's Reply, Exhibit D, which are distinctly different from the language in this certificate. Defendant has also submitted the affidavit of William Hoffman, in which he states that when a "follow the settlements" clause occurs in a contract, it is typically drafted under such headings as "Settle-

ments," "Loss Settlements," "Claims," or "Notice of Loss and Claims," and is never included in a definition of terms. Defendant's Reply, Ex. E. Defendant further notes the deposition testimony of William Gilmartin, that he has never seen a "follow the fortunes" clause in a definition of loss. Defendant's Reply, Exhibit D, Gilmartin Dep., pp. 135, 139–140.

not be disregarded to create a new or better contract or to add to, subtract from, modify, or alter any terms of the agreement. *Checchio*, 335 N.J.Super. at 501, 762 A.2d 1057; *Standard Refinery Union v. Esso Standard Oil Co.*, 31 N.J.Super. 548, 107 A.2d 513 (1954).

New Jersey law further holds that an insurance policy generally should be interpreted according to its plain and ordinary meaning, and in the absence of an ambiguity in the language of the policy, a court should not engage in a strained construction to support the imposition of liability, or write for the insured a better policy of insurance than the one purchased. *Progressive Casualty Insurance Co. v. Hurley*, 166 N.J. 260, 272–73, 765 A.2d 195 (2001).[6]

"[E]vidence of an established custom or usage in the trade is generally admissible as an aid in the interpretation of the meaning of language used in an insurance policy or other contract." *Public Service Mut. Ins. Co. v. White*, 4 N.J.Super. 523, 526, 68 A.2d 278 (N.J.Super.Ct.App.Div.1949). However, the alleged custom or usage must be clearly established and must be known to the parties or so notorious in the trade as to charge them with notice thereof. *Id.*, 4 N.J.Super. at 527, 68 A.2d 278.

In *Cramer & King Co. v. National Surety Co. of New York*, 103 N.J.L. 83, 85, 134 A. 771 (1926), the court stated:

[W]here the sense of the words and expressions used in a policy is either ambiguous or obscure on the face of the instrument, or is made so by proof of extrinsic circumstances, parol evidence is admissible to explain by usage their meaning in the given case. No doubt, too, every usage of a particular trade, which is so well settled or so generally known that all persons engaged in that trade may be fairly considered as contracting with reference to it, is considered to form part of every policy, designed to protect risks in such trade, unless the express terms of the policy decisively repel the inference. But the usage, in order to be binding, must be either a general usage of the whole mercantile world, or a particular usage of universal notoriety in the trade upon which, and of the place at which, the insurance is effected; the usage of a particular place, or of a particular class of persons, cannot be binding on nonresidents, or on other persons, unless they are shown to have been cognizant of it or the usage is shown to have existed under such circumstances, or for such a length of time, as to have become generally well known to all persons concerned in or about the branch of trade to which it relates, and so as to warrant a presumption that contracts are made with reference to it.

The burden of proof of showing a special usage establishing a peculiar and technical meaning of words of a policy is on the party asserting it. and the proof must be clear and explicit. *Id.*, 103 N.J.L. at 86, 134 A. 771. *See also Kronisch v. Howard Savings Institution*, 154 N.J.Super. 576, 599, 382 A.2d 64 (1977)(usage cannot be proved by isolated instances, but must be so certain, uniform, and notorious that it must be presumed to have been understood by the parties as entering into and constituting a part of the contract, and even when the contracting parties are en-

---

**6.** New Jersey law also holds that the doctrine of *contra proferentum,* which requires that any ambiguities in an insurance contract be resolved in favor of the insured, does not apply when a sophisticated insured has participated in the negotiation or drafting of the policy terms. *See Pittston Co. Ultramar America v. Allianz Insurance Co.,* 124 F.3d 508, 521 (3d Cir.1997)(applying New Jersey law).

gaged in the same trade or business, the claimed usage must be clearly established).

■ This court has examined the reinsurance certificate at issue in this case. On its face, this certificate contains no language which could reasonably be construed as a "follow the settlements" clause. There is no ambiguity in that regard in the actual language of the certificate. However, in light of the fact that the New Jersey law discussed above indicates that this court may look beyond the face of the contract to determine the intent of the parties, even in the absence of any ambiguity in the contract language, the court will review the additional evidence bearing on intent which has been submitted by the parties.

■ The plaintiff has submitted the affidavit of Wayne Keith, a former underwriter for the defendant who supervised David Smith, the underwriter who actually drafted the certificate in this case. Plaintiff's Motion for Partial Summary Judgment, Ex. F. Mr. Keith stated that Mr. Smith negotiated the terms of the certificate and sent it to Mr. Keith for his review and approval. Keith Affid., ¶ 5. Mr. Keith further stated that the "follow the fortunes" doctrine is inherent in all reinsurance relationships, and that this doctrine obligates the reinsurer to pay its share of all settlements made by the reinsured so long as those settlements are reasonable and in good faith. Keith Affid., ¶ 9. He also stated that if defendant declined to participate in the investigation of claims, defendant may not second guess any reasonable and good faith settlement made by plaintiff. *Id.*

Defendant argues that Mr. Keith's opinion concerning the "follow the fortunes" doctrine does not expressly indicate what the parties' intentions were in regard to the certificate in this case. Defendant notes that Keith admitted in his deposition that defendant was not the underwriter of the certificate, that he could not speak for the defendant, and that, in the absence of language in the certificate, there was no intention by the defendant to include a "follow the fortunes" clause. Defendant's Memorandum Contra, Ex. I, Keith Dep. pp. 67, 98.

Defendant has submitted the affidavit of David L. Smith, the underwriter who wrote the certificate for defendant. Defendant's Memorandum Contra, Ex. J. Mr. Smith stated that the reinsurance agreement was intended to be governed by the provisions in that agreement, and that no additional terms were intended to be applied. Smith Affid., ¶ 7. He stated that the certificate does not and was not intended to contain a "follow the fortunes" clause, and that such a clause is not inherent in every reinsurance contract. Smith Affid., ¶ 10. Plaintiff has not submitted evidence from anyone engaged in the negotiation or drafting of the certificate on plaintiff's side.

The parties have also submitted affidavits from experts. Plaintiff has offered the affidavit of William J. Gilmartin. Plaintiff's Reply, Ex. G. Gilmartin stated that based on his nearly fifty years of experience in underwriting reinsurance, he has personal knowledge of customs, practices and usages in the American reinsurance market. Gilmartin Affid., ¶ 11. Gilmartin stated that in his view, the "follow the fortunes" doctrine requires the reinsurer to follow the underwriting and claims decisions of the reinsured and to share the bad debt of the reinsured, whereas the "follow the settlements" doctrine is a subset of the "follow the fortunes" doctrine and requires the reinsurer to follow the good faith claims settlements of the reinsured. Gilmartin Affid., ¶ 18. Gilmartin further stated that, according to the custom and practice of the business at the time this certificate was issued, rein-

surers would expect to follow the settlements of insureds, even in the absence of an express "follow the settlements" clause, in the absence of fraud, collusion, bad faith, *ex gratia* payment or gross negligence in the handling of the claim, and would not require insureds to undergo a *de novo* proof of liability. Gilmartin Affid., ¶ 28. According to Gilmartin, the burden is on the reinsurer to prove that one of these defects to the settlement exists. Gilmartin Affid., ¶ 33.

Defendant has submitted the affidavit of William C. Hoffman. Defendant's Memorandum Contra, Ex. F. Hoffman stated that clauses such as "follow the settlements" are subject to negotiation in the reinsurance industry, and that they have the effect of waiving the reinsurer's right to insist on proof of the reinsured's liability. Hoffman Affid., ¶ 5(g). Hoffman further stated that no reinsurance custom, usage, or practice exists which implies a duty to "follow the settlements" in the absence of such a clause, and that, in fact, the standard custom and usage is that such a loss settlement clause must be included in the contract. Hoffman Affid., ¶ 5(h). He also stated that this was the practice in 1974 at the time the certificate in this case was negotiated. Hoffman Affid., ¶¶ 6, 7.

The parties have also submitted various treatises whose authors give conflicting opinions on the custom and practice in the insurance. These include an article by William Hoffman, *On the Use and Abuse of Custom and Usage in Reinsurance Contracts*, 33 Tort & Ins. L.J. 1 (Fall, 1997); *Reinsurance: Indemnifying Insurers for Insurance Losses* 31 (R. Strain, ed.1997); Staring, *Law of Reinsurance*, § 18.2; and Staring, "Unsettling Loss Settlements Doctrine: A Comment on Some Deviant Decisions," *Mealey's Reinsurance*, Vol 6, Issue 7 (Aug. 9, 1995), which hold the opinion that the doctrine is not inherent, and Lasley, "Follow the Settlements" Reasonable, Not 'Deviant,' *Mealey's Reinsurance*, Vol 6, Issue 13 (Nov. 8, 1995), in which Ms. Lasley, lead counsel for the reinsured in the *National American Insurance Company* case, defended the contrary view. *See* Defendant's Reply, Ex. C.

Based on the evidence submitted by the parties, this court finds that genuine issues of fact exist which preclude the award of partial summary judgment to either party on the issue of whether a "follow the settlements" clause should be read into this policy based on custom or practice in the industry.

*IV. Conclusion*

Based on the foregoing, plaintiff's motion to strike portions of the Hoffman affidavit (Docket # 37) and defendant's motion to strike portions of the Gilmartin affidavit (Docket # 37) are granted in part and denied in part. Plaintiff's motion for partial summary judgment (Docket # 21) is denied. Defendant's motion for partial summary judgment (Docket # 24) is granted in part and denied in part.

It is so ORDERED.